# Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: 12-21678-CIV-LENARD/GOODMAN

LAURA EGGNATZ and KATRINA GARCIA,
individually, and on behalf of all others similarly situated,

      *Plaintiffs*,

   vs.

KASHI COMPANY, a California
Corporation,

      *Defendants.*

_____/

## JOINT DECLARATION OF CLASS COUNSEL IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

1. We, Gillian L. Wade, Angela V. Arango-Chaffin, L. DeWayne Layfield, and Michael T. Fraser, are Class Counsel and counsel of record for Plaintiffs Katrina Garcia and Laura Eggnatz ("Plaintiffs" or "Class Representatives"), and we respectfully submit this Joint Declaration in support of Plaintiffs' Motion for Attorneys' Fees and Costs. Except as otherwise noted, we have personal knowledge of the facts set forth in this Declaration, and could testify competently to them if called upon to do so.

2. Pursuant to the Stipulation of Settlement (ECF 179-1) (the "Agreement"), Class Counsel are entitled to request that the Court award attorneys' fees in the amount of $1,500,000 and up to $180,000 in litigation costs and expenses incurred. Agreement at § VIII(A). Kashi will also not oppose Service Awards of $5,000 for each of the two Class Representatives.

3. As indicated in the Court-approved Notice disseminated to the Class, and consistent with standard class action practice and procedure, Class Counsel request a fee amounting to $1,500,000 and reimbursement of $168,204 in litigation costs and expenses incurred. Class Counsel also seek Service Awards in the amount of $5,000 for each of the two Class Representatives, to compensate the Class Representatives for their time, effort and risks they undertook in prosecuting the Litigation.

4. Class Counsel have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. We have a thorough understanding of the practical and legal issues Plaintiffs would continue to face taking this case to verdict, based on our collective experience in other consumer fraud class actions and the procedural posture of this Litigation at the time settlement was reached. Plaintiffs faced a number of serious challenges, class certification, the materiality of the 'All Natural' claims and calculating class-wide damages

1

chief among them.

5.      Plaintiffs allege the marketing and labeling of certain Kashi food products as "All Natural," "100%," and containing "Nothing Artificial" is false and deceptive because the Products were made with genetically modified organisms ("GMOs") and allegedly synthetic ingredients such as Pyridoxine Hydrochloride, Alpha-Tocopherol Acetate, Hexane-Processed Soy ingredients and Calcium Pantothenate (the "Challenged Ingredients").

6.      On May 3, 2012, Plaintiffs Katrina Garcia and Laura Eggnatz filed a class action complaint against Defendant and its parent company, Kellogg Company ("Kellogg"), in this District seeking monetary damages, declaratory relief and injunctive relief. [ECF 1]. On July 7, 2012, Kashi and Kellogg jointly moved to dismiss Plaintiffs' original complaint under Federal Rule of Civil Procedure 12(b)(6), and after the motion was fully briefed [ECF 7, 13], this action was consolidated with Julie Martin's   case (originally filed in the Northern District of California) [ECF 30]. Plaintiffs filed an Amended Consolidated Class Action Complaint on February 1, 2013 [ECF 33], which Kashi again moved to dismiss [ECF 37].

7.      On October 18, 2013, while Kashi's Rule 12(b)(6) motion was pending [ECF 7, 45], Plaintiffs filed a Second Amended Consolidated Class Action Complaint (the "SAC"). [ECF 58].   Kashi moved to dismiss for the third time on December 2, 2013.   [ECF 71]. On September 5, 2014, the Court entered an Order granting in part and denying in part Kashi's motion to dismiss Plaintiffs' SAC. [ECF 99]. The Court held Plaintiffs' claims were not preempted by federal law, and that the primary jurisdiction doctrine did not require referral of claims to the Food and Drug Administration (FDA). Id. at 16. The Court also rejected Kashi's efforts to dismiss Plaintiffs' claims for FDUTPA violations, negligent misrepresentation, breach of express warranty and

money had and received. Id. at 32-48. The Court did, however, dismiss Kellogg as a party defendant and Plaintiffs' claims for breach of implied warranty and declaratory judgment, and limited Plaintiffs' claims to the eight Kashi products Plaintiffs actually purchased by the Class Representatives. Id. at 1392-94.

8.      On January 16, 2015, Plaintiffs filed a motion for class certification [ECF 118] and Kashi filed a motion for summary judgment [ECF 142]. Briefing on these motions was complete on March 2, 2015. [ECF 163, 166].

9.      Trial was set to commence June 1, 2015. [ECF 100].

10.      The Parties exchanged written discovery and Class Counsel reviewed thousands of documents and dozens of commercials produced by Defendant. Plaintiffs also responded to written discovery and sat for contentious half-day depositions.

11.      The Parties also completed expert discovery. Plaintiffs retained the following key liability experts: (1) Dr. Thomas Maronick, a marketing expert who designed and implemented a consumer survey regarding the Challenged Ingredients and Kashi's labels; (2) Dr. Charles M. Benbrook, Ph.D., an agricultural technology expert who opined on whether products containing the Challenged Ingredients are natural and/or artificial; and, (3) economist David Sharp, Ph.D., who devised two methods for calculating class-wide damages.

12.      Defendant disclosed three rebuttal experts: (1) Dr. Itamar Simonson (offering a rebuttal opinion to Dr. Maronick); (2) Dr. Roger A. Clemens (offering a rebuttal opinion to Dr. Benbrook); and, (3) Dr. Michael P. Emmert (offering a rebuttal opinion to Dr. Sharp). Defendant deposed Drs. Maronick and Benbrook.

13.      The Parties settled just days before the deadline to file motions *in limine*, thus,

Class Counsel had already drafted motions and were engaged in full trial preparation at the time the parties reached the Settlement.

14.     On December 12, 2012, the Parties engaged in preliminary settlement discussions via private mediation with the Honorable Judge J. Richard Haden (Ret.). Agreement § I(K). The Parties did not reach an agreement. The Court referred the Parties back to mediation, which occurred on June 4, 2014 before Judge Haden. In advance of the negotiations, Kashi provided Plaintiffs with documents and information regarding the Products, the Challenged Ingredients and the Products' national sales during the class period. The Parties did not reach an agreement at the second mediation.

15.     After the close of fact and expert discovery, fully briefed motions for class certification summary judgment, and an in-person settlement meeting in Chicago with Defendant's lead counsel, the parties attended another full day of formal mediation before Judge Haden on March 24, 2015. [ECF 160, 163, 166]. At the final mediation, the Parties had the benefit of full fact and expert discovery, including expert reports and depositions, document production, and Class Representative and Rule 30(b)(6) depositions.

16.     With the assistance of Judge Haden, the Parties reached an agreement to resolve this Litigation on a national class basis (except California residents, in light of the *Astiana* settlement). At all times throughout the mediation proceedings and settlement discussions, the negotiations were adversarial, non-collusive and at arm's length.

17.     The Parties executed the Agreement on June 5, 2015, memorializing the agreement reached at mediation.

18.     The Court granted Preliminary Approval of the Settlement on September 4, 2015. [ECF 183]. In its Order, the Court conditionally certified the Settlement Class, appointed Class Counsel and ordered the dissemination of Notice.

19.     The Settlement involves both monetary and injunctive relief. It obliges Defendant to pay $3.99 million in cash to the Settlement Class. Agreement § IV(A)(2). The proceeds of the Settlement, less the costs of settlement administration, attorneys' fees, expenses and Service Awards, will be distributed to claiming Settlement Class Members. *Id.*

20.     Class Members who make valid claims accompanied by written proof of purchase (i.e. receipts) will receive a full reimbursement for those Products from the Settlement. Agreement § IV(A)(1)(a). There is no limit to the number of units for which Class Members can be reimbursed where they submit receipts. *Id.* For Class Members who do not submit a proof of purchase with their claims, Kashi will reimburse $0.55 (fifty-five cents) per package for every Product purchased during the Class Period, with a maximum recovery of fifty (50) boxes, for a total recovery of $27.50. *Id.* at § IV(A)(1)(b). The total amount of money available to pay Class Members' eligible claims must be at least $2 million. *Id.* at § IV(A)(1)(a). Claimants' reimbursements may be proportionately modified up or down, on a per-unit basis, depending on the amount of claims made. *Id.* at § IV(A)(3). It is our understanding, based on the information provided to us by the Claims Administrator, 96,214 claims, totaling approximately $955,750 have been submitted.

21.     Under the Settlement, Kashi agrees not to oppose Class Counsel's request for attorneys' fees of $1.5 million, plus reimbursement of litigation costs and expenses up to $180,000. *Id.* at § VIII(A). Kashi will also not oppose Service Awards of $5,000 for each of the

two Class Representatives. The Service Awards, attorneys' fees and costs will be paid from the Settlement payment by Kashi. *Id.* at §§ IV(A)(2)(b), VIII(A).

22.     In addition to this monetary relief, Defendant agreed to significant and valuable injunctive relief—removal of the "All Natural," "100% Natural," and "Nothing Artificial" labels on Products containing any of the Challenged Ingredients, unless such ingredient is approved or determined as acceptable by a federal agency or controlling regulatory body to be designated as "natural." *Id.* at IV(C)(1). Kashi also agreed to remove the 'All Natural' claims from packaging in *Astiana v. Kashi Company,* No. 3:11-CV-01967, ECF 242 (C.D. Cal. September 2, 2014) (entering judgment and granting final approval). However, the settlement reached in *Astiana* applies only to California residents and does not mention removing the claims from packaging distributed nationally.

23.     Kashi will also provide Plaintiffs' Counsel with compliance information regarding the Non-GMO Project Verified label designations on certain Kashi products on a bi-annual basis for three years. Id. at § IV(C)(2).

24.     In the context of food labeling class action settlements, the type of business reform injunctive relief we achieved in the Settlement is rare and provides a lasting benefit to the Class and the public years beyond the date of settlement and distribution of monetary relief.

25.     In total, Class Counsel has billed 3,708 hours, totaling approximately $1,693,788.75 in lodestar. As set forth in detail below, Class Counsel's lodestar is reasonable.

26.     The hourly rates of Class Counsel in this Litigation ($550 to $575 for partners and $275 to $450 for associates) are comparable to those approved in other cases in Florida and this District. *See* **Exhibit B** at pages 2, 4 (2013 National Law Journal Billing Survey, listing a Miami

law firm's average billing rates as $350 to $611 for partners and $175 to $425 for associates and Tampa law firm's average billing rates between $455 and $840 for partners).

27. The hours billed by Class Counsel in the Litigation are reasonable. As set forth below, prosecuting this action entailed extensive motion practice, fact and expert discovery and trial preparation.

### Milstein Adelman, LLP

28. Milstein Adelman, LLP ("MA") is a plaintiff law firm comprising twenty-three lawyers, based out of Santa Monica, California. MA has more than twenty years of experience leading and handling consumer class actions, mass torts and complex litigation. MA has represented thousands of plaintiffs in over 250 complex actions, and has recovered over $500 million for its clients. The class action attorneys at MA specialize in consumer products litigation and have particular expertise in cases involving false advertising and consumer deception. The firm has been appointed as lead or co-lead class counsel in several matters, including: *Morales v. Kraft Foods Group, Inc.,* No. LA CV 14-04387 (PJWx); (C.D. Cal. 2015); *Arreguin v. Telebrands* (SBSC CVRS 13307798) (2015); *Paul v. Wine.com* (SFSC CGC13534734) (2015); *Toney v. Just Fabulous* (LASC BC533943) (2015); *McCrary v. The Elations Company, LLC*, (CDCA 13CV00242) (2014); *Smith v. Intuit, Inc.* (NDCA 1200222) (2013); *Solomon v. Ramona's Mexican Food Products, Inc.* (LASC BC463914) (2013); *Saenz v. SEIU United Healthcare Workers West* (ACSC RG09478973) (2013); *Griar, et al., v. Glaxosmithkline, Inc. et al.* (LASC BC288536) (2012); *In re Budeprion XL Marketing and Sales Practices Litigation* (MDL No. 2107) (2012); *Keller v. Gaspari Nutrition, Inc.,* (CDCA 11CV06158) (2011); *Weeks et al v. Kellogg, et al.,* (CDCA 09CV08102) (2011); *Williams, et al. v. Biotab Nutraceuticals, Inc.* (LASC BC414808) (2010); *Wally*

*v. CCA Industries, Inc.* (CASC BC422833) (2010); *Fallon v. E.T. Browne Drug Co., Inc.* (LASC BC 411117) (2009); *Oliver, et al. v. Atmos Corporation* (SJSC CV0119362) (2009); *Salcido v. Iomedix* (LASC BC 387942) (2009); *Deist, et. al. v. Viking Industries*, (SJSC CV 025771) Apr. 9, 2009); *Ceballos v. Fuze Beverage, LLC* (LASC BC 394521) (2009); *Heath, et al. v. County of San Bernardino*, (EDCA 06CV00411) (2008); *Klyachman, et al. v. The Vitamin Shoppe, et al.* (NJSC L173907) (2008); *Shaffer v. Continental Casualty Company, et al.*, (CDCA 06CV02235) (2008) (class certification aff'd. at D.C. 06CV02235); *Klotzer, et al. v. International Windows* (SCSC FCS021196) (2007); *LaRosa v. Nutramerica Corp.* ("Trimspa"), (LASC BC309427) (2007); *Abigana, et al. v. Rylock Company Ltd.* (ACSC 2002 076625) (2006); *Hufschmidt v. Allstate Insurance Company* (LASC BC291782) (2004).

29.     Gillian L. Wade is a partner at MA leading the class action department.  She has been with MA for over ten years and became a partner in 2010.  Ms. Wade graduated from the University of California, San Diego (B.A. Political Science, 1999) and Pepperdine University (J.D. 2003). She also graduated *magna cum laude* from Pepperdine law school, received the John Purfield Memorial Scholarship for academic excellence, and served as a staff writer for the Pepperdine Law Review. Ms. Wade has been admitted to practice law in California since 2003.

30.     Ms. Wade's practice focuses on representing plaintiffs in complex litigation and consumer class actions, with particular emphasis on consumer fraud involving and actions arising under various state consumer protection statutes, including the Florida Deceptive Trade Practices Act ("FDUTPA").  She has played integral roles as lead and co-lead counsel in class actions recovering millions of dollars for consumers.  Ms. Wade has had significant involvement in the resolution of over 50 consumer fraud class actions and has been appointed lead class counsel or

co-lead in several state and federal class actions throughout the United States, including: *Toney v. Just Fabulous* (Los Angeles Superior Court Case No. BC533943) (2015) (representing "VIP" members of JustFab regarding overcharges for restocking fees and monthly auto-billing); *Paul v. Wine.com* (San Francisco Superior Court Case No. CGC-13-534734) (2015) (alleging violations of the auto-purchase renewal statute and misleading "free shipping" representations); *Arreguin v. Telebrands* (San Bernardino Superior Case No. CVRS 13307798) (2015) (representing purchasers of defective "Pockethose" product); *McCrary v. The Elations Co., LLC* (EDCV 13-00242 JGB) (C.D. Cal. 2014) (representing California purchasers of Elations "joint health supplement beverage" alleging false claims of "clinical-proof" on product labeling); *Solomon v. Ramona's Food Products* (LASC No. BC 451080) (2014) (representing purchasers of mislabeled food products); *Smith, et al. v. Intuit, Inc.* (5:12-cv-00222-EJD) (N.D. Cal. 2014) (alleging fraudulent charges associated with Turbo Tax); *Saenz v. SEIU United Healthcare Workers-West* (Alameda Super. Ct. No. RG09478973) (2013) (representing individuals against labor union for data security breach); *In re Budeprion XL and Marketing and Sales Practices Litigation* (MDL No. 2107) (E.D. Pa. 2012) (co-lead class counsel in centralized proceeding alleging fraudulent omissions on the labeling of generic anti-depressant); *Keller v. Gaspari Nutrition, Inc.* No. 2:11-cv-06158-GAF (C.D. Cal. 2012) (representing purchasers of testosterone pills); *Pabst v. Genesco, Inc.,* 3:11-cv-01592-SI (N.D. Cal. 2012) (representing California consumers regarding privacy violation); *Wike v. HCG Platinum, LLC.* (LASC. No. BC451080) (2012) (representing purchasers of the dietary supplement HCG Platinum); *Litwin v. iRenew, et al.,* LASC. No. BC447114 (representing purchasers of iRenew brand bracelet) (2011); *Weeks, et al. v. Kellogg, et al.*, CV-09-08102 (MMM) (C.D. Cal. 2010) (representing purchasers of food products regarding

alleged false "immunity" claims); *Thompson, et al., v. Biotab Nutraceuticals*, Inc. (LASC No. BC414808, 2010) (representing national class of purchasers of dietary supplement for male enhancement); *Fallon v. ET Browne Drug Corp.* (LASC No. 411117) (2009) (representing class of purchasers of mislabeled cosmetic products); *Shaffer v. Continental Casualty Company* (2:06-cv-2235-PSG) (C.D. Cal. 2008) (representing national class of elderly insureds alleging consumer fraud and financial abuse of the elderly in the sale and marketing of long term care insurance policies); *Heath, et al. v. County of San Bernardino* (5:06-CV-00411-VAP) (C.D. Cal. 2008) (representing limited term firefighters for civil rights and FLSA violations).

31.     Ms. Wade is involved in multiple class actions centralized by the MDL Panel throughout the Country and has been appointed to the Plaintiffs' Executive Committees in several federal class actions centralized by the MDL Panel, including: *In re Nutramax Cosamin Marketing and Sales Practices Litigation* (MDL No. 2489)(D. Md.); *In re Pom Wonderful Marketing and Sales Practices Litigation* (MDL No. 2199)(C.D. Cal.); *In re Budeprion XL Marketing and Sales Practices Litigation* (MDL No. 2107)(E.D. Pa.); *In re Liberty Refund Anticipation Loan Litig.* (MDL No. 2334) (N.D. Ill.) and *In re H&R Block Refund Anticipation Litig.* (MDL No. 2373) (N.D. Ill.).

32.     Prior to joining Milstein Adelman, Ms. Wade was a litigation associate at Jones Day where she defended corporations in consumer fraud class actions, ERISA cases, and actions arising under the Fair Credit Reporting Act.

33.     Sara D. Avila is also member of MA's class action and complex litigation practice group. Her practice focuses on representing plaintiffs in complex litigation and consumer class actions, with particular emphasis on consumer fraud actions involving false and misleading

advertising, food labeling and actions arising under various state consumer protection statutes, including FDUTPA. Ms. Avila has had significant involvement in over 30 consumer class actions. She also has experience representing plaintiffs in actions stemming from consumer deception, habitability statutes, employment violations, bad faith insurance disputes and antitrust actions. Ms. Avila has been appointed class counsel in several state and federal class actions, including *Toney v. Just Fabulous* (Los Angeles Superior Court Case No. BC533943) (2015); *Arreguin v. Telebrands*, No. CV-RS-13307798 (San Bernardino Superior Court 2015); *Paul v. Wine .com*, No. CG-C-13534734 (San Francisco Superior Court 2015); *McCrary v. The Elations Company, LLC*, No. 13-cv-00242 (C.D. Cal. 2015); *Saenz v. SEIU United Healthcare Workers-West*, No. RG09478973 (Alameda Superior Court 2013); *Weeks v. Kellogg*, CV-09-08102 (MMM) (C.D. Cal. 2011); and, *Pabst v. Genesco, Inc.*, 3:11-cv-01592-SI (N.D. Cal. 2011). Ms. Avila has been admitted to practice law in California since 2009.

34.     In total, MA has billed 2,153.25 hours, totaling $992,031.25 in fees to date.

35.     Below is a summary of hours spent by MA in this Litigation:

| Timekeeper | Hours to Date | Rate Per Hour | Total Amount Billed |
|---|---|---|---|
| Mark A. Milstein (Partner) | 36.0 | $   575.00 | $          20,700.00 |
| Gillian L. Wade (Partner) | 785.5 | $   550.00 | $         417,175.00 |
| Sara D. Avila (Associate) | 1182.5 | $   450.00 | $         532,125.00 |
| Legal Assistant/ Paralegal | 176.25 | $   125.00 | $        22,031.25 |
| **TOTAL** | 2153.25 | | $          992.031 |

36.     Mr. Milstein routinely bills at $750 per hour and Ms. Wade typically bills at $650 per hour, but reduced their rates for purposes of this Motion only, to conform to the partner rates routinely awarded in the Miami-Dade County area. *See* Exhibit B at pages 2, 4. Indeed, Courts in other actions across the Country have approved these and higher rates for Milstein Adelman attorneys in the past. *See, e.g., Toney v. Just Fabulous, Inc*., No. BC533943 (Los Angeles Superior Court 2015) (approving rate of $650/hour for Ms. Wade; $425 for associates); *Paul v. Wine.com*, No. 1CGC-13-534734 (San Francisco Superior Court 2015) (approving rate of $650/hour for Ms. Wade; $425 for associates); *Arreguin v. Telebrands*, No. CVRS 13307798) (Superior Court of San Bernardino 2014); *Solomon v. Ramona's Food Products*, No. BC-451080 (Los Angeles County 2013) (approving rate of $550 per hour for Ms. Wade and $350 for associates); *Smith v. Intuit*, No. 5:12-cv-00222-EJD (N.D. Cal. 2013) (approving rate of $550 for partners (including Ms. Wade) and $295 for associates in); *Keller v. Gaspari Nutrition, Inc*., No. 11-06158 (C.D. Cal. 2012) (approving rate of $550 per hour for Ms. Wade and $295 per hour for associates); *Hayes v. Airtrade Int'l., Inc*., No. 10-177539 (Santa Clara County 2012) (approving rate of $550 for partners (including Ms. Wade) and $275 for associates); *Pabst v. Genesco, Inc*., 3:11-cv-01592-SI (N.D. Cal. 2012) (approving rate of $500 for partners (including Ms. Wade) and $350 for associates (including Ms. Avila)); *Weeks v. Kellogg*, No. 09-8102, ECF 157 (C.D. Cal. 2011) (approving rate of $550/hour for Ms. Wade and $350/hour for associates (including Ms. Avila)).

37.     MA's hours spent were reasonable. Below is a summary of hours worked by Class Counsel in this Litigation as of December 10, 2015:

        a.  extensive legal research into the viability of the legal claims to be asserted

on behalf of Plaintiffs and the Class;

b.  communicating with and interviewing Plaintiffs regarding their potential claims against Defendant;

c.  routinely communicating with Plaintiffs throughout the lifetime of the Litigation, including reports and discussions regarding status of case, their discovery responses and depositions, mediation and the Settlement;

d.  preparing initial complaint;

e.  meeting and conferring with counsel for Defendant throughout the Litigation and preparing stipulations regarding same;

f.  drafting and editing Second Amended Consolidated Complaint (SAC);

g.  opposing Defendant's Rule 12(b)(6) Motion to Dismiss SAC;

h.  engaging in meeting of counsel pursuant to Rule 26(f) and preparing Joint Rule 26(f) Discovery Plan;

i.  reviewing the Court's Standing Order in this Litigation;

j.  reviewing Court's various Scheduling Orders in this Litigation;

k.  meeting and conferring with counsel for Defendant regarding Stipulation for Protective Order; preparing same;

l.  drafting written discovery (including multiple sets of interrogatories, requests for admissions and document requests) and deposition notice per Rule 30(b)(6);

m.  performing extensive legal research regarding motions to quash subpoenas and motions to compel responses to subpoenas;

n.  drafting and editing responses to written discovery propounded by Defendant on Plaintiffs;

o.  reviewing and analyzing thousands of pages of documents produced by Defendant, including advertisements, consumer surveys and internal communications, memoranda, presentations, and scientific studies related to the Challenged Ingredients;

p.  performing extensive legal research regarding Rule 23 certification of claims under FDUTPA, including monitoring activity in *Karhu* appeal;

q.  drafting, reviewing and revising Motion for Leave to File 4AC and supporting documents; reviewing Opposition and performing additional legal research; preparing Reply to Opposition and supporting documents;

r.  performing factual research and investigation regarding Defendant's supporting documents and evidence filed with Defendant's Opposition to Motion for Class Certification; perform extensive legal research regarding the Federal Rules of Evidence and evidentiary objections in connection with Rule 23;

s.  investigating Defendant's factual contentions;

t.  in preparing the Motion for Class Certification and mediation, performing extensive research regarding Class Notice and interviewing potential third party claims administrators; reviewed and negotiated cost estimates;

u.  upon reaching the Settlement, communicating with third party claims administrator regarding a myriad of issues regarding Class Notice,

14

including estimated cost, form and content of notice, the class action website, publications for print notice, the scope and timeframe of notice; discuss issues regarding specific class member inquiries; communicate with at least two dozen unnamed class members regarding the litigation;

v. communicating with and interview potential experts and consultants regarding key liability issues; negotiate terms of agreements with experts and prepare/ edit retainers for experts;

w. reviewing documents, information and data with Plaintiffs' three liability experts and formulate and refine Plaintiff's legal theories regarding Rule 23 requirements, the elements of Plaintiff's claims under FDUTPA and Kashi's defenses;

x. spending significant time preparing for and taking Federal Rule if Civil Procedure 30(b)(6) depositions (including travel to La Jolla, California from Los Angeles, California);

y. meeting and conferring with counsel for Defendant regarding trial date and scheduling trial-related deadlines;

z. reviewing experts' draft reports and discussing experts' opinions;

aa. reviewing and analyzing rebuttal reports served by Defendant's experts;

bb. extensive communications, including in-person meetings, with Plaintiffs' experts regarding Defendant's rebuttal experts, summary judgment and trial preparation;

cc. spending significant time preparing for and defending the depositions of

15

Drs. Maronick and Benbrook;

dd. drafting and revising motions *in limine* (not filed);

ee. drafting and revising opposition to Defendant's Rule 56 Motion for Summary Judgment and documents in support thereof;

ff. trial preparation, including creating witness list and exhibit list;

gg. researching and preparing a detailed mediation briefs; attending mediation with the Honorable J. Richard Haden (Ret.) at JAMS;

hh. extensive settlement negotiations, with the assistance of Judge Haden;

ii. preparing for and traveling to Chicago for in-person meeting with Kashi's counsel;

jj. negotiating many details of the terms of Settlement and the Agreement and exhibits thereto;

kk. drafting and revising the Motion for Preliminary approval and supporting documents; performing legal research regarding approval of class action settlement in the Eleventh Circuit and this District;

ll. communicating with DSG regarding Settlement Class Notice, Claim Forms, Settlement Class Notice (including content, timeline, publications, internet notice), the Settlement Website, print notice, and monitoring costs. Receive and review weekly reports regarding claims, opt-outs, website views and responding to various questions from unnamed class members;

mm. communicating with unnamed class members regarding the

Settlement;

nn. significant coordination with co-counsel regarding case strategy and litigation cost allocations;

oo. drafting and revising the Motion for Service Award for the Class Representatives;

pp. drafting and revising the Motion for Attorneys' Fees and Costs and accompanying documentation; and,

qq. drafting and revising the Motion for Final Approval and accompanying documentation.

38.     MA incurred $156,313.73 in costs and expenses in this Litigation as of December 1, 2015. The categories of expenses for which MA, as detailed below, seeks reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed. The expenses include but are not limited to: clerk fees, filing fees, court reporter charges; photocopies; postage and overnight delivery; expert fees and costs; mediation fees; travel expenses (travel to Chicago, Illinois, San Diego and La Jolla, California for depositions and mediation). Below are the costs incurred by MA in this Litigation:

| *EXPENSE CATEGORY* | | *COST* |
|---|---|---|
| | | |
| Clerk Fees, Filing Fees, Court Reporters | $ | 2,016.95 |
| Overnight Mail/ Postage | $ | 367.23 |
| Printing and Reproduction | $ | 1,105.61 |
| Lodging and Transportation | $ | 1,502.28 |
| Mediator Fees | $ | 2,454.16 |
| Expert Witness Fees | $ | 148,867.50 |
| *TOTAL* | **$** | **156,313.73** |

**The Law Offices of L. DeWayne Layfield**

39.     L. DeWayne Layfield is the sole member of Law Office of L. DeWayne Layfield, is licensed to practice before all courts in the State of Texas, and is admitted *pro hac vice* in the Litigation.

40.     Attached hereto as **Exhibit A** is a true and correct copy of the resume for L. DeWayne Layfield and incorporated herein as if set out in its entirety in this paragraph.

41.     In total, the Law Office of L. DeWayne Layfield, PLLC worked 193.10 hours, investigating and prosecuting this Litigation.   Those hours have a value totaling $111,032.50 in fees through December 1, 2015.

42.     Below is a summary of hours spent by the Law Office of L. DeWayne Layfield, PLLC in this Litigation:

| Timekeeper | Hours to Date | Rate Per Hour | Total Amount Billed |
|---|---|---|---|
| L. DeWayne Layfield (Attorney) | 193.10 | $575.00 | $111,032.50 |
| **TOTAL** | 193.10 | $575.00 | **$111,032.50** |

43.     Mr. Layfield's hourly rate has previously been approved in consumer class action litigation. *See, e.g., Barrett v. Hewlett Packard Company,* No. CJ-2003-967 (District Court for Cleveland County, Oklahoma 2013).

44.     The Law Office of L. DeWayne Layfield, PLLC's hours spent were reasonable. Below is a summary of hours worked by the firm in the Litigation:

      a.   Approximately 13% reviewing and analyzing case filings

b. Approximately 24% preparing for and participating in multiple mediations and meetings in an effort to resolve the litigation

c. Approximately 63% drafting, reviewing, and editing pleadings and case related documents; pre-filing investigation and due diligence; legal research; and communication and coordination with co-counsel regarding case strategy

45. The Law Office of L. DeWayne Layfield, PLLC's incurred $5,009.53 in expenses, all of which were reasonable. The table below summarizes the expenses incurred by the Layfield firm in this Litigation. The categories of expenses for which the Layfield firm, as detailed below, seeks reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed. The expenses include but are not limited to: postage and overnight delivery; mediation fees; travel expenses ($3,071.08 for transportation and lodging) a mediation in San Diego, California and an in-person meeting with Defendant in Chicago, Illinois.

46. Below are the costs incurred by the Layfield firm in the Litigation:

| *EXPENSE CATEGORY* | *COST* |
|---|---|
| | |
| Pro hac admission documentation | $ 18.00 |
| Overnight Mail/ Postage | $ 25.82 |
| Lodging and Transportation | $ 3,071.08 |
| Mediator Fees | $ 1,616.68 |
| Litigation Services | $ 277.95 |
| *TOTAL* | **$ 5,009.53** |

**The Chaffin Law Firm**

47. The Chaffin Law Firm is a plaintiff's litigation firm based out of Houston, Texas.

The Chaffin Law Firm has more than 40 years of experience representing plaintiffs in complex litigation. Robert A. Chaffin is the senior partner at the Chaffin Law Firm. He is licensed to practice before all courts in the state of Texas and is admitted *pro hoc vice* in this action. Mr. Chaffin graduated *magna cum laude* at the University of Houston Bates College of Law in 1972 where he finished third in his class and served as Associate Editor of the Houston Law Review in 1972.

48.     Since 1972 Mr. Chaffin has practiced exclusively in the field of plaintiffs law and has obtained multiple verdicts in excess of $10,000,000 while also having made successful arguments before the United States Supreme Court in *Griffin vs. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S Ct. 3245, 73 L.ED.2d 973 (1982), and the Texas Supreme Court in *Chapa v. Garcia*, 848 S.W.2d 667 (Tex. 1992).   In addition, Mr. Chaffin has been a featured speaker at the American Association of Justice annual convention as well as Texas Trial Lawyers functions.   On multiple occasions Mr. Chaffin has been selected as a "Super Lawyer" and "Top Attorney in Texas" as well as receiving AV+ rating from Martindale Hubbell.   Mr. Chaffin has been lead counsel in several oil and gas royalty class action cases in Texas resulting in recoveries for thousands of royalty owners: Civil Suit No. 202576; *Odis W. LeVrier et al v. Union Pacific Resources Group, Inc. et al*; In the 9th Judicial District Court, Parish of Rapides, State of Louisiana and, Cause No. 1998-A-169; *J. Lloyd Woods et al v. Union Pacific Resources Company et al*; In the 123rd Judicial District Court of Panola County, Texas.

49.     Angela V. Arango-Chaffin, has been Of Counsel to the Chaffin Law Firm since February 2011.   Ms. Arango-Chaffin graduated *magna cum laude* and *phi beta kappa* from Rice University, Houston Texas (B.A. Hispanic Studies, 2007) and *magna cum laude* from the

20

University of Miami Law School (J.D. 2010). She received the Florence T. Robbins Scholarship, sponsored by Greenberg Traurig, at the University of Miami Law School, and the Dean's Honor Award for Legal Research and Writing. Ms. Arango-Chaffin has been admitted to practice law in Florida since 2011. Ms. Arango-Chaffin has over four years of experience representing plaintiffs in consumer class action cases involving false advertising and consumer deception, with a particular emphasis on false advertising and consumer fraud involving actions arising under Florida's Deceptive and Unfair Trade Practices Act.

50.     In total, the Chaffin Law Firm billed 683 hours, totaling $309,775.00 in fees to date.

51.     Below is a summary of hours spent by The Chaffin Law Firm in the Litigation:

| Timekeeper | Hours to Date | Rate Per Hour | Total Amount Billed |
|---|---|---|---|
| Robert A. Chaffin (Partner) | 60 | $575.00 | $34,500 |
| Angela V. Arango-Chaffin (Of Counsel) | 623 | $425.00 | $264,775 |
| **TOTAL** | 683 | | **$299,275** |

52.     Mr. Chaffin routinely charges $750 per hour, but reduced his rate to $575 per hour for purposes of this Litigation only, to conform to the partner rates routinely awarded in the Miami-Dade County area. *See* Exhibit B at 2, 4.

53.     The Chaffin Law Firm's hours spent were reasonable. Below is a summary of hours worked by Class Counsel in the Litigation:

a.  extensive legal research into the viability of the legal claims to be asserted on behalf of Plaintiff and the Class;

b.   communicating with and interviewing Plaintiff Garcia regarding her potential claims against Defendant;

c.   routinely communicating with Plaintiff Garcia throughout the lifetime of the Litigation, including reports and discussions regarding status of case, her discovery responses and depositions, mediation and the Settlement;

d.   preparing initial complaint;

e.   Conducting extensive research related to Plaintiffs' claims, including thoroughly reviewing scientific literature regarding whether GMOs can be considered 'natural';

f.   Researching federal policy concerning labeling of food products containing GMOs and marketed as 'all natural';

g.   Significant coordination with co-counsel regarding case strategy;

h.   Drafting and revising the original complaint and all subsequent pleadings;

i.   Reviewing all motions and discussion of the same;

j.   Monitoring and performing extensive legal research and analysis of consumer food labeling class actions throughout the Country;

k.   Drafting and developing Responses in Opposition to Defendant's Motions to Dismiss the original and amended pleadings and drafting oppositions to Defendant's accompanying Requests for Judicial Notice;

l.   Assist with mediation preparation during various stages in the litigation process;

m.   Assisting Plaintiff with her Responses to Defendant's Requests for Production and Interrogatories;

22

    n.  Preparing Plaintiff for deposition and defending said deposition;

    o.  Participating in the discovery process, including review of discovery documents and expert reports;

    p.  Developing Response in Opposition to Defendant's motion for Summary Judgment;

    q.  Reviewing and discussing the Class Certification Motion and Motion for Preliminary Approval;

    r.  Participating in settlement discussions;

### Law Offices of Howard W. Rubinstein, P.A.

54. Michael T. Fraser has been of counsel with the Law Offices of Howard W. Rubinstein, P.A. ("LOHWR") since June, 2014. Mr. Fraser graduated from Stetson University, (B.A. English, 2005) and Nova Southeastern University (J.D. 2009). He graduated *cum laude* from NSU law school, where he received numerous academic awards, served on the Nova Trial Association, the Moot Court Board, and as the Editor-in-Chief of *Nova Law Review*. Mr. Fraser has been admitted to practice law in Florida since 2010 and in California since 2011. Mr. Fraser's practice focuses on representing plaintiffs in complex litigation and consumer class actions, with particular emphasis on consumer fraud involving and actions arising under various state consumer protection statutes, including FDUTPA. Mr. Fraser is involved in multiple class actions either centralized or pending centralization by the MDL Panel throughout the Country. Prior to joining, as of counsel, LOHWR, Mr. Fraser was a litigation associate defending professionals and governmental organizations at two different firms located in the State of Florida.

55.     Benjamin Lopatin is former Managing Partner at the Law Offices of Howard W. Rubinstein, P.A., a role he held from 2012 to 2014. Mr. Lopatin focuses his practice on civil litigation, primarily involving class actions, consumer protection, unfair competition, false advertising, product liability, food law, and privacy law.   Mr. Lopatin graduated from the State University of New York at Buffalo (B.S. Business Administration 2005). He also graduated *cum laude* from the Shepard Broad Law Center at Nova Southeastern University, in Fort Lauderdale, Florida (J.D. 2009), where he received an honors award at graduation for his outstanding *pro bono* service in the community. During law school, Mr. Lopatin served as the Marketing Editor for *Nova Law Review*, on the executive boards for several student organizations and as a Research and Teaching Assistant for Professor Kimberley Hausbeck, where he assisted first year law students in the area of legal research and writing. Mr. Lopatin also provided research and editorial assistance to Professor Hausbeck in a published article, *The Little Engine That Could: The Success of the Stewardship Contracting Authority*, 32 WM. & MARY ENVTL. L. &POL'Y REV. 33 (2007). After law school, Mr. Lopatin attended and graduated from DePaul College of Law in 2011, with his Master of Laws (LL.M.) in Intellectual Property, where he was selected to be a member of the Phi Kappa Phi honors society. Mr. Lopatin has litigated numerous consumer protection class actions, and was appointed Class Counsel in the following cases: *Rappaport v. Jamba Juice Co.*, No.: CGC-12-521091 (San Francisco Superior Court) (consumer protection class action regarding misleading advertising of Jamba Juice beverage additive); *Klacko, et al v. Diamond Foods, Inc*., Case No. 14-80005-BB (S.D. Fla.) (consumer protection class action regarding Kettle Chips labeled as being "All Natural" but containing unnatural, synthetic, artificial, and/or genetically modified ingredients); and *Moore v. GNC Holdings, Inc.*, No.

12-61703 (S.D. Fla.) (consumer protection class action regarding failure to warn of known dangers on the labeling of a dietary supplement). Mr. Lopatin is admitted to practice law in the State of California and numerous District Courts, including all District Courts in California, the District of Colorado, and the Northern District of Illinois (General Bar).

56.     In total, LOHWR billed 678.8 hours, totaling $291,450.00 in fees to date.

57.     Below is a summary of hours spent by LOHWR in this Litigation:

| Timekeeper | Hours to Date | Rate Per Hour | Total Amount Billed |
|---|---|---|---|
| Benjamin M. Lopatin (former Managing Partner) | 492 | $ 450.00 | $221,400.00 |
| Michael T. Fraser (Of Counsel) | 186.8 | $ 375.00 | $70,050.00 |
| **TOTAL** | 678.8 | | **$291,450.00** |

58.     The Law Office of Howard W. Rubinstein, P.A.'s hours spent were reasonable. Below is a summary of hours worked by LOHWR in the Litigation:

    a.     extensive legal research into the viability of the legal claims to be asserted on behalf of Plaintiff and the Class;

    b.     communicating with and interviewing Plaintiff Eggnatz regarding her potential claims against Defendant;

    c.     routinely communicating with Plaintiff Eggnatz throughout the lifetime of the Litigation, including reports and discussions regarding status of case, her discovery responses and depositions, mediation and the Settlement;

d.   preparing initial complaint;

e.   Conducting extensive research related to Plaintiffs' claims, including thoroughly reviewing scientific literature regarding whether GMOs can be considered 'natural';

f.   Researching federal policy concerning labeling of food products containing the allegedly synthetic ingredients and marketed as 'all natural';

g.   Significant coordination with co-counsel regarding case strategy;

h.   Drafting and revising the original complaint and all subsequent pleadings;

i.   Editing and reviewing Responses in Opposition to Defendant's Motions to Dismiss the original and amended pleadings and drafting oppositions to Defendant's accompanying Requests for Judicial Notice;

j.   Assist with mediation preparation during various stages in the litigation process;

k.   Assisting Plaintiff with her Responses to Defendant's Requests for Production and Interrogatories;

l.   Preparing for, traveling to and defending the Class Representatives' depositions;

m.   Drafting sections of Plaintiffs' Motion for Class Certification;

n.   Drafting sections of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement;

o.   Drafting sections of the Opposition to Defendant's motion for Summary

Judgment;

    p.  Participating in settlement discussions;

59.    Costs incurred by LOHWR in this matter are $6,881.12, all of which were reasonable. The categories of expenses for which Class Counsel, as detailed below, seek reimbursement are the type of expenses routinely charged to paying clients in the marketplace and, therefore, the full requested amount should be reimbursed. The expenses include but are not limited to: filing fees, mediation fees, travel expenses for Plaintiffs' depositions (airfare to Fort Lauderdale from San Francisco, lodging and rental car).

60.    Below is a detailed breakdown of LOHWR's costs incurred in the Litigation:

| EXPENSE CATEGORY | COST |
|---|---|
| Clerk Fees, Filing Fees, Attorney Service and Court Reporters | $ 350.00 |
| Overnight Mail/ Postage | $ |
| Telephone/ Conference Call | $ |
| Internal Photocopies | $ |
| Printing and Reproduction | $ |
| Lodging and Transportation | $ 4,077.12 |
| Mediator Fees | $ 2,454.16 |
| Expert Witness Fees | $ |
| Litigation Class Notice | $ |
| *TOTAL* | $ **6,881.12** |

61.    Class Counsel maintained contemporaneous and detailed time records and documentation evidencing each of the claimed expenses. At the Court's request, Class Counsel can provide the Court with these documents and information for *in camera* review.

62.    Class Counsel has not been reimbursed for any costs incurred in the Litigation

and will not be reimbursed absent the Court's award.

63.     Plaintiffs' future costs (*e.g.*, travel to the Settlement Hearing) are not included in the requested cost award, and Plaintiffs do not seek reimbursement for those costs.

64.     Given the contentious history of the Litigation and the results achieved, the number of hours is reasonable, particularly because Class Counsel will only be compensated for a portion of that time.

65.     Class Counsel took appropriate steps to avoid duplication of effort and to efficiently manage, staff, assign and divide the work between the four law firms and amongst lower and higher-level attorneys.

66.     If the lodestar approach were applied, this case would justify a multiplier. Considering a significant multiplier would certainly be justified in this case, Class Counsel's fee request would satisfy a cross-check using the lodestar method.

67.     Class Counsel's work is not yet done. Class Counsel still need to, among other things: (1) continue to monitor the notice program, communicate with the Claims Administrator, Digital Settlement Group (DSG) and respond to class member inquiries; (2) respond to objections, if any; (3) prepare for and attend the Settlement Hearing; (4) continue to oversee the claims administration process, including addressing any claim review issues; (5) monitor distribution of benefits to the Settlement Class; (6) potentially handle post-judgment appeals; and (7) review and monitor Defendant's submissions of bi-annual compliance reports for three years following the Effective Date, as required by section IV(C) of the Agreement.

68.     The time Class Counsel spent on the Litigation was time that could not be spent on litigating other matters. Class Counsel have worked on this case since early 2012, when they were

contacted by Plaintiffs and investigated their claims. In effect, Class Counsel has loaned their legal services to the Settlement Class since that time. Class Counsel have prosecuted this case wholly on a contingency basis, and did so at great risk of never receiving any compensation, due to the risky nature of class action litigation and the developing law with respect to Rule 23 requirements and the implied ascertainability requirement, "All Natural" food-labeling claims, and calculating class-wide damages. In addition to the contingent risk of the case, Class Counsel's representation of Plaintiffs and the Class in this heavily litigated case forced Class Counsel to forego other cases.

69.     False advertising claims regarding 'natural' labeling on food products has been developing in federal and state courts across the Country, including this District, and are still being met with vigorous opposition. Indeed, at the time Plaintiffs filed suit, there was a growing trend by courts to reject claims similar to those of Plaintiffs here.

70.     While Class Counsel are confident in the strength of Plaintiffs' case, they are also pragmatic in their awareness of the fact that in order to succeed at trial, Plaintiffs would be required to succeed on their pending Motion for Class Certification and overcome Kashi's defenses on the merits, whether on Kashi's pending summary judgment motion or at trial. Kashi vigorously opposed Plaintiffs' Motion for Class Certification, which was filed weeks after an order from the Honorable Beth J. Bloom denying class certification in a similar consumer class action regarding 'all natural' claims. Specifically, Judge Bloom found the class was not ascertainable[1] because the variation in the challenged products and labels created a "subjective

---

[1] At the time the Parties settled, the issue of whether class members can self-identify where retailers have no records identifying class members was on appeal before the Eleventh Circuit and has since been decided. *Karhu v. Vital Pharmaceuticals,* No. 14-11648, 2015 WL 3560722 (11th Cir. 2015) (affirming order denying class certification) (unpublished). This decision, albeit unpublished, would have presented serious obstacles to class certification, as most class members

memory problem," as consumers would have to "remember whether they purchased the challenged products." *See Randolph v. J.M. Smucker Co.,* No. 13-CIV-80581, 303 F.R.D. 679, 685-692 (Dec. 23, 2014). Defendant's counsel in this Litigation also represented J.M. Smucker in *Randolph.*

71.      Defendant put forward evidence, including internal documents, consumer surveys and expert testimony in support of Kashi's contention that consumers have varying definitions of the term 'natural' and that 'All Natural' claims are not material to reasonable consumers. [ECF 142 at pp. 11-14]. Although Class Counsel are confident we could have overcome Kashi's challenges with its own expert's consumer survey and testimony regarding commonality and typicality, Class Counsel recognize the risks associated with proving materiality, reliance and class-wide damages. If they were to prevail on their Motion for Class Certification, with Kashi's summary judgment motion under submission, Plaintiffs also faced an imminent risk of judgment being entered against the entire class. Even if Plaintiffs prevailed on all of these issues at the district court level, Defendant would have raised them again before the Eleventh Circuit following entry of judgment, thereby creating new risks and years of delay. Each of these risks, standing alone, could have impeded Plaintiffs' successful prosecution of these claims at trial (and in any appeal). Together, they overwhelmingly demonstrate that Plaintiffs' claims against Kashi were far from a "slam dunk" and that, in light of all the circumstances, the Settlement achieves an excellent class-wide result.

---

do not have receipts.

72. The Settlement is outstanding. Instead of facing additional years of costly and uncertain litigation, Settlement Class Members will receive an immediate cash benefit as well as valuable future non-monetary relief.

73. Further evidence of the excellent result Class Counsel achieved is the fact that the Settlement has been met with near-universal approval at this stage. The Notice informed the Class about the Settlement terms, including that Plaintiffs would seek (1) up to $180,000 in costs and $1,500,000 in attorneys' fees and (2) Service Awards of $5,000 for each of the two Class Representatives. Moreover, based on the information provided to us by the Claims Administrator, 96,214 Class Members have submitted claims, and there have been zero objections and zero opt-outs to the Settlement.

74. Class Counsel are seasoned attorneys with considerable experience litigating and settling consumer protection class actions of similar size, scope and complexity. As set forth above, Class Counsel regularly engage in major complex litigation involving deceptively labeled consumer products and have been appointed class counsel by courts throughout the country. Class Counsel's skill at adapting our litigation strategies to address the challenges posed by adverse case law on Rule 23 and 'all natural' food-labeling claims, as well as the formidable defense mounted by Kashi's counsel, was critical in opposing multiple Rule 12(b)(6) motions to dismiss, fully briefing class certification and opposing Defendant's Motion for Summary Judgment.

75. As set forth above, Class Counsel thoroughly investigated Plaintiffs' claims and made skillful use of documents and information to assess Defendant's potential exposure as to the claims at issue. With this information, Class Counsel developed theories of certification and

liability after carefully studying, along with Plaintiff's agricultural technology and consumer marketing experts, and Defendant's internal marketing materials and documents regarding the Challenged Ingredients. Class Counsel also enlisted the assistance of Dr. Sharp to assist in developing Plaintiff's damages and restitution theories, utilizing Defendant's internal marketing materials, financial data and shipping records, in addition to third party data. Class Counsel marshalled this discovery in briefing on class certification and summary judgment.

76.     The skill and competence of Defendant's lawyers should be considered and cannot be doubted. Defendant is represented by Jenner Block, full-service global law firm with 480 lawyers, and Buchanan Ingersoll & Rooney, PC, with 510 lawyers, both of whom have the resources and reputations for vigorous and effective advocacy of their clients' interests. *See* www.jenner.com and www.bipc.com. For that reason, Class Counsel had to stay on the very top of every single one of the many, sprawling issues at play during the life of the litigation.

77.     DSG has undertaken a number of activities necessary for the Settlement Class, including effectuating Notice and collecting and administering claims. These steps were all done with approval and oversight of Class Counsel and counsel for Defendant to ensure Notice was reasonable and the best practicable, but also to keep expenses as low as possible.

78.     Class Notice and Claims Administration is estimated to cost $300,000. This figure will be refined and updated as additional claims are received and further steps are taken towards final approval and distribution.

79.     Accordingly, it is proper to pay the costs of Notice and Claims Administration from the Settlement payment by Kashi, and these costs are reasonable and should be approved.

80. The Service Awards in the amount of $5,000 for each of the two Class Representatives should also be approved. Service Awards in these amounts are reasonable, because the Class Representatives dedicated their time and effort to pursuing their claims on behalf of putative class members and demonstrated a willingness to participate in the Litigation. Plaintiffs also undertook the responsibilities and attendant risks of bringing a representative action, including aiding in investigating their claims, responding to discovery, sitting for contentious, half-day depositions, communicating with Plaintiffs' counsel on a regular basis. Plaintiffs' work in this Litigation resulted in a significant benefit to Class members.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 14th day of December, 2015.

Los Angeles, California

*/s/ Gillian L. Wade*
Gillian L. Wade
Milstein Adelman, LLP


Miami, Florida

*/s/ Angela V. Arango-Chaffin*
Angela V. Arango-Chaffin
Chaffin Law Firm


Beaumont, Texas

*/s/ L. DeWayne Layfield*
L. DeWayne Layfield
Law Office of L. DeWayne Layfield, PLLC


Granite Bay, California

*/s/ Michael T. Fraser*
Michael T. Fraser
Law Offices of Howard W. Rubinstein, P.A.

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that on this 14th day of December, 2015, this filing complies with Local Rule 5.1 and this Court's January 29, 2015 Order (Dkt. 173).

By:    /s/ Gillian L. Wade
                  Gillian L. Wade

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed and served via CM/ECF electronic transmission on December 14, 2015 to those parties that are registered with the Court to receive electronic notifications in this matter.

By:    /s/ Michael T. Fraser
                  Michael T. Fraser

# EXHIBIT A

**L. DeWayne Layfield** was born in Beaumont, Texas on November 18, 1963. Mr. Layfield graduated *summa cum laude* with a B.S. in Chemical Engineering from Lamar University in 1987. He graduated from The University of Texas School of Law with Honors and was admitted to the Texas Bar in 1990. Thereafter, he clerked for the Honorable Thomas Gibbs Gee, Circuit Judge United States Court of Appeals for the Fifth Circuit. At the conclusion of the clerkship, he joined Vinson & Elkins LLP in their Houston, Texas office. In 1995, Mr. Layfield joined Bridgestone/Firestone, Inc. as senior litigation counsel. In 1997, Mr. Layfield returned to private practice. Mr. Layfield's practice has involved class and non-class mass tort litigation, the nationwide coordination of tort litigation as well as commercial, contract, and environmental litigation. Mr. Layfield has assisted with the prosecution or defense of thousands of individual claims and class litigation involving tens of thousands of individuals. Mr. Layfield has been appointed class counsel in the following matters:

(1) Cause No. 1:99cv0120; *Ethan Shaw, et al. v. Toshiba America Information Systems, et al.*; In the United States District Court for the Eastern District of Texas;

(2) Cause No. A-162,152; *Hal LaPray, et al. v. Compaq Computer Corporation*; In the 60th Judicial District Court, Jefferson County, Texas;

(3) Cause No. A-164,880; *Muzette Alvis, et al. v. Hewlett-Packard Company*; In the 58th Judicial District Court, Jefferson County, Texas;

(4) Cause No. D-164,939; *Michael Albanese, et al. v. Compaq Computer Corporation*; In the 136th Judicial District Court, Jefferson County, Texas;

(5) Cause No. E-165,336; *David Packard, et al. v. eMachines, Inc., et al.*; In the 172nd Judicial District Court, Jefferson County, Texas;

(6) Cause No. E-167,872; *Sandra Geter, et al. v. Farmers Group, Inc., et al.*; In the 172nd Judicial District Court, Jefferson County, Texas; and

(7) Cause No. 8725; *Anderson Brothers Partnership, et al. v. EnerMart Energy Services Trust, et al.*; In the 287th Judicial District Court, Parmer County, Texas

(8) Cause No. CJ-2003-967; *Debbie Barrett, Individually and on Behalf of Those Similarly Situated v. Hewlett Packard Company*; In the District Court for Cleveland County, Oklahoma;

(9) Cause No. CJ-2003-969; *Stephen Grider, Beverly Grider v. Compaq Computer Corporation*; In the District Court for Cleveland County, Oklahoma

(10) Cause No. 9:14-cv-80005-BB; *Deena Klacko, et al. v. Diamond Foods, Inc., a California Corporation;* In the United Stated District Court in the Southern District of Florida

Mr. Layfield is also a member of the Plaintiffs' Steering Committee in MDL-1840 *In Re Fuel Temperature Sales Practice.*

These class actions and other individual actions prosecuted by Mr. Layfield have resulted in cash payments to or for the benefit of his clients of over $750 million. Considering cash equivalent payments and other benefits the recovery for these clients is over $2 billion. Mr. Layfield has also been counsel for defendants in class actions.

Mr. Layfield is admitted to practice before the courts of Texas as well as the Federal Courts for the Eastern and Southern Districts of Texas and the United States Court of Appeals for the Fifth Circuit. He is a member of the American Bar Association, American Association for Justice, Defense Research Institute; a Life Fellow of the Texas Bar Foundation; has been named a Super

Lawyer and included in the Best Lawyers in America and is a past Member of the State Bar or Texas Committee on Jury Service.

       While at The University of Texas School of Law, Mr. Layfield served as Editor in Chief of the *Texas Law Review* and was a member of Chancellors and the Order of the Coif.  Mr. Layfield has also been elected to Tau Beta Pi and Omega Chi Epsilon as well as other honorary societies.

# EXHIBIT B



**2013 NLJ Billing Survey**

Source:National Law Journal

Category: National Law Journal

The National Law Journal's survey of billing rates of the largest U.S. law firms provides the high, low and average rates for partners and associates.

Copyright © ALM Media Properties, LLC. All rights reserved.

| Year | Firm Name | Location | Average FTE Attorneys | Partner Billing Rate High | Partner Billing Rate Low | Partner Billing Rate Avg | Associate Billing Rate High | Associate Billing Rate Low | Associate Billing Rate Avg | Counsel Avg | Counsel Low | Counsel High | NLJ Billing Source | Notes |
|------|-----------|----------|-----------------------|---------------------------|--------------------------|--------------------------|-----------------------------|----------------------------|----------------------------|-------------|-------------|--------------|--------------------|-------|
| 2013 | Adams and Reese | New Orleans, LA | 277 | $650.00 | $275.00 | $390.00 | $320.00 | $200.00 | $260.00 | $460.00 | $405.00 | $500.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Akerman Senterfitt | Miami, FL | 502 | $610.00 | $350.00 | $480.00 | $425.00 | $175.00 | $300.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Akin Gump Strauss Hauer & Feld | Washington, DC | 806 | $1220.00 | $615.00 | $785.00 | $660.00 | $365.00 | $525.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Allen Matkins Leck Gamble Mallory & Natsis | Los Angeles, CA | 187 | $680.00 | $525.00 | $615.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Alston & Bird | Atlanta, GA | 805 | $875.00 | $495.00 | $675.00 | $575.00 | $280.00 | $425.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Andrews Kurth | Houston, TX | 348 | $1090.00 | $745.00 | $890.00 | $1090.00 | $265.00 | $670.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Archer & Greiner | Haddonfield, NJ | 208 | $460.00 | $330.00 | $400.00 | $295.00 | $200.00 | $245.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Arent Fox | Washington, DC | 323 | $860.00 | $500.00 | $650.00 | $595.00 | $275.00 | $395.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Arnall Golden Gregory | Atlanta, GA | 139 | $520.00 | $430.00 | $490.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Arnold & Porter | Washington, DC | 748 | $950.00 | $670.00 | $815.00 | $610.00 | $345.00 | $500.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Arnstein & Lehr | Chicago, IL | 141 | $595.00 | $350.00 | $465.00 | $350.00 | $175.00 | $250.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | | | | | | | | | | | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Baker & Hostetler** | Cleveland, OH | 810 | $685.00 | $250.00 | $450.00 | $455.00 | $120.00 | $260.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Baker & McKenzie** | Chicago, IL | 4004 | $1130.00 | $260.00 | $755.00 | $925.00 | $100.00 | $395.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Baker, Donelson, Bearman, Caldwell & Berkowitz** | Memphis, Tenn. | 587 | $495.00 | $340.00 | $400.00 | $465.00 | $245.00 | $295.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Ballard Spahr** | Philadelphia, PA | 479 | $650.00 | $395.00 | $475.00 | $495.00 | $235.00 | $315.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Barnes & Thornburg** | Indianapolis, IN | 487 | $580.00 | $330.00 | $480.00 | $370.00 | $260.00 | $320.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Benesch, Friedlander, Coplan & Aronoff** | Cleveland, OH | 150 | $635.00 | $360.00 | $455.00 | $475.00 | $155.00 | $280.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Best Best & Krieger** | Riverside, CA | 175 | $655.00 | $340.00 | $455.00 | $385.00 | $235.00 | $280.00 | $435.00 | $325.00 | $565.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Bingham McCutchen** | Boston, MA | 900 | $1080.00 | $220.00 | $795.00 | $605.00 | $185.00 | $450.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Blank Rome** | Philadelphia, PA | 471 | $940.00 | $445.00 | $640.00 | $565.00 | $175.00 | $350.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Bond, Schoeneck & King** | Syracuse, NY | 194 | $520.00 | $240.00 | $355.00 | $285.00 | $160.00 | $225.00 | $385.00 | $295.00 | $485.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Bowles Rice** | Charleston, WV | 128 | $285.00 | $165.00 | $230.00 | $180.00 | $115.00 | $135.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Bracewell & Giuliani** | Houston, TX | 432 | $1125.00 | $575.00 | $760.00 | $700.00 | $275.00 | $440.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Bradley Arant Boult Cummings** | Birmingham, AL | 396 | $605.00 | $325.00 | $430.00 | $340.00 | $200.00 | $260.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Broad and Cassel** | Orlando, FL | 160 | $465.00 | $295.00 | $380.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Brownstein Hyatt Farber Schreck** | Denver, CO | 216 | $700.00 | $310.00 | $520.00 | $345.00 | $265.00 | $305.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Bryan Cave** | St. Louis, MO | 990 | $860.00 | $405.00 | $590.00 | $570.00 | $210.00 | $405.00 | $600.00 | $320.00 | $810.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Buchalter Nemer** | Los Angeles, CA | 134 | $695.00 | $475.00 | $605.00 | $375.00 | $350.00 | $365.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Burr & Forman** | Birmingham, AL | 249 | $525.00 | $240.00 | $355.00 | $350.00 | $200.00 | $245.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Butzel Long** | Bloomfield Hills, MI | 125 | $535.00 | $350.00 | $440.00 | $415.00 | $215.00 | $305.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Cadwalader, Wickersham & Taft** | New York, NY | 435 | $1050.00 | $800.00 | $930.00 | $750.00 | $395.00 | $605.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Carlton Fields** | Tampa, FL | 276 | $840.00 | $455.00 | $600.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Connell Foley** | Roseland, NJ | 121 | $575.00 | $275.00 | $425.00 | $325.00 | $200.00 | $265.00 | $450.00 | $275.00 | $625.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Cooley** | Palo Alto, CA | 632 | $990.00 | $660.00 | $820.00 | $630.00 | $160.00 | $525.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Covington & Burling** | Washington, DC | 738 | $890.00 | $605.00 | $780.00 | $565.00 | $320.00 | $415.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| 2013 | Cox Smith Matthews | San Antonio, TX | 117 | $595.00 | $395.00 | $505.00 | $485.00 | $230.00 | $320.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Cozen O'Connor | Philadelphia, PA | 509 | $1050.00 | $300.00 | $555.00 | $590.00 | $235.00 | $345.00 | $560.00 | $360.00 | $790.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Curtis, Mallet-Prevost, Colt & Mosle | New York, NY | 322 | $860.00 | $730.00 | $800.00 | $785.00 | $345.00 | $480.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Davis Graham & Stubbs | Denver, CO | 146 | $595.00 | $350.00 | $435.00 | $340.00 | $150.00 | $245.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Davis Polk & Wardwell | New York, NY | 787 | $985.00 | $850.00 | $975.00 | $975.00 | $130.00 | $615.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Debevoise & Plimpton | New York, NY | 615 | $1075.00 | $955.00 | $1055.00 | $760.00 | $120.00 | $490.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Dechert | New York, NY | 803 | $1095.00 | $670.00 | $900.00 | $735.00 | $395.00 | $530.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Dentons | | | $1050.00 | $345.00 | $700.00 | $685.00 | $210.00 | $425.00 | | | | National Law Journal, December 2013 | Location and Average FTE Attorneys' data not available due to merger in 2013. Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Dickstein Shapiro | Washington, DC | 308 | $1250.00 | $590.00 | $750.00 | $585.00 | $310.00 | $475.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Dinsmore & Shohl | Cincinnati, OH | 422 | $850.00 | $250.00 | $400.00 | $350.00 | $140.00 | $235.00 | $345.00 | $140.00 | $615.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | DLA Piper | New York, NY | 4036 | $1025.00 | $450.00 | $765.00 | $750.00 | $250.00 | $510.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Dorsey & Whitney | Minneapolis, MN | 517 | $585.00 | $340.00 | $435.00 | $510.00 | $215.00 | $315.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| 2013 | Firm | Location | | | | | | | | | | | Source | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Duane Morris** | Philadelphia, PA | 613 | $710.00 | $430.00 | $620.00 | $490.00 | $295.00 | $370.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Edwards Wildman Palmer** | Boston, MA | 572 | $765.00 | $210.00 | $535.00 | $415.00 | $245.00 | $325.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Faegre Baker Daniels** | Minneapolis, MN | 683 | $580.00 | $355.00 | $455.00 | $315.00 | $110.00 | $260.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Foley & Lardner** | Milwaukee, WI | 872 | $860.00 | $405.00 | $600.00 | $470.00 | $210.00 | $335.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Foley Hoag** | Boston, MA | 223 | $775.00 | $590.00 | $670.00 | $385.00 | $290.00 | $325.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Fox Rothschild** | Philadelphia, PA | 490 | $750.00 | $335.00 | $530.00 | $500.00 | $245.00 | $310.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Fried, Frank, Harris, Shriver & Jacobson** | New York, NY | 476 | $1100.00 | $930.00 | $1000.00 | $760.00 | $375.00 | $595.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Gardere Wynne Sewell** | Dallas, TX | 223 | $775.00 | $430.00 | $635.00 | $445.00 | $235.00 | $310.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Gibbons** | Newark, NJ | 210 | $865.00 | $440.00 | $560.00 | $475.00 | $295.00 | $360.00 | $490.00 | $385.00 | $750.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Gibson, Dunn & Crutcher** | New York, NY | 1086 | $1800.00 | $765.00 | $980.00 | $930.00 | $175.00 | $590.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Gordon & Rees** | San Francisco, CA | 457 | $475.00 | $375.00 | $420.00 | $325.00 | $285.00 | $300.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Greenberg Traurig** | New York, NY | 1699 | $955.00 | $360.00 | $655.00 | $595.00 | $200.00 | $390.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | Attorneys | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Harris Beach** | Rochester, NY | 204 | $600.00 | $295.00 | $385.00 | $285.00 | $175.00 | $260.00 | $385.00 | $175.00 | $600.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Harter Secrest & Emery** | Rochester, NY | 136 | $465.00 | $300.00 | $385.00 | $290.00 | $195.00 | $250.00 | $325.00 | $260.00 | $380.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Haynes and Boone** | Dallas, TX | 489 | $1020.00 | $450.00 | $670.00 | $580.00 | $310.00 | $405.00 | $510.00 | $220.00 | $840.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Hogan Lovells** | Washington, DC | 2280 | $1000.00 | $705.00 | $835.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Holland & Hart** | Denver, CO | 409 | $725.00 | $295.00 | $435.00 | $415.00 | $165.00 | $275.00 | $360.00 | $185.00 | $595.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Holland & Knight** | Washington, DC | 926 | $1035.00 | $335.00 | $595.00 | $575.00 | $210.00 | $325.00 | $580.00 | $480.00 | $775.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Honigman Miller Schwartz and Cohn** | Detroit, MI | 227 | $560.00 | $290.00 | $390.00 | $225.00 | $205.00 | $220.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Hughes Hubbard & Reed** | New York, NY | 344 | $995.00 | $725.00 | $890.00 | $675.00 | $365.00 | $555.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Husch Blackwell** | St. Louis, MO | 514 | $925.00 | $235.00 | $430.00 | $465.00 | $190.00 | $260.00 | $395.00 | $230.00 | $600.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Ice Miller** | Indianapolis, IN | 301 | $530.00 | $335.00 | $450.00 | $305.00 | $245.00 | $270.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Irell & Manella** | Los Angeles, CA | 164 | $975.00 | $800.00 | $890.00 | $750.00 | $395.00 | $535.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jackson Kelly** | Charleston, WV | 200 | $370.00 | $175.00 | $280.00 | $265.00 | $145.00 | $195.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | | | | | | | | | | | Source | Notes |
|------|------|----------|--|--|--|--|--|--|--|--|--|--|--------|-------|
| 2013 | **Jackson Lewis** | Los Angeles, CA | 690 | $440.00 | $310.00 | $380.00 | $315.00 | $275.00 | $290.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jackson Walker** | Dallas, TX | 328 | $550.00 | $450.00 | $500.00 | $385.00 | $255.00 | $335.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jeffer, Mangels, Butler & Mitchell** | Los Angeles, CA | 126 | $875.00 | $560.00 | $690.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jenner & Block** | Chicago, IL | 432 | $925.00 | $565.00 | $745.00 | $550.00 | $380.00 | $465.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jones Day** | New York, NY | 2363 | $975.00 | $445.00 | $745.00 | $775.00 | $205.00 | $435.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Jones Walker** | New Orleans, LA | 361 | $425.00 | $275.00 | $385.00 | $240.00 | $200.00 | $225.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Kasowitz, Benson, Torres & Friedman** | New York, NY | 365 | $1195.00 | $600.00 | $835.00 | $625.00 | $200.00 | $340.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Katten Muchin Rosenman** | Chicago, IL | 586 | $745.00 | $500.00 | $615.00 | $595.00 | $340.00 | $455.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Kaye Scholer** | New York, NY | 414 | $1080.00 | $715.00 | $860.00 | $680.00 | $320.00 | $510.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Kelley Drye & Warren** | New York, NY | 298 | $815.00 | $435.00 | $640.00 | $600.00 | $305.00 | $430.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Kilpatrick Townsend & Stockton** | Atlanta, GA | 552 | $775.00 | $400.00 | $550.00 | $475.00 | $315.00 | $385.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **King & Spalding** | Atlanta, GA | 838 | $995.00 | $545.00 | $775.00 | $735.00 | $125.00 | $460.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | Attorneys | | | | | | | | | | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Kirkland & Ellis** | Chicago, IL | 1517 | $995.00 | $590.00 | $825.00 | $715.00 | $235.00 | $540.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Knobbe, Martens, Olson & Bear** | Irvine, CA | 268 | $785.00 | $440.00 | $555.00 | $535.00 | $295.00 | $345.00 | $685.00 | $685.00 | $685.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Kramer Levin Naftalis & Frankel** | New York, NY | 320 | $1025.00 | $740.00 | $845.00 | $750.00 | $400.00 | $590.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Lane Powell** | Seattle, WA | 172 | $465.00 | $365.00 | $430.00 | $330.00 | $225.00 | $265.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Latham & Watkins** | New York, NY | 2033 | $1110.00 | $895.00 | $990.00 | $725.00 | $465.00 | $605.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Lathrop & Gage** | Kansas City, MO | 286 | $700.00 | $285.00 | $420.00 | $375.00 | $195.00 | $250.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Leonard, Street and Deinard** | Minneapolis, MN | 184 | $490.00 | $295.00 | $405.00 | $305.00 | $265.00 | $285.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Lewis Roca Rothgerber** | | | $695.00 | $380.00 | $505.00 | $525.00 | $205.00 | $400.00 | | | | National Law Journal, December 2013 | Location and Average FTE Attorneys' data not available due to merger in 2013. Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Lindquist & Vennum** | Minneapolis, MN | 181 | $600.00 | $460.00 | $520.00 | $470.00 | $275.00 | $365.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Littler Mendelson** | San Francisco, CA | 909 | $615.00 | $395.00 | $550.00 | $420.00 | $245.00 | $290.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Lowenstein Sandler** | Roseland, NJ | 254 | $755.00 | $510.00 | $615.00 | $650.00 | $260.00 | $360.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Manatt, Phelps & Phillips** | Los Angeles, CA | 325 | $795.00 | $640.00 | $740.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **McCarter & English** | Newark, NJ | 373 | $625.00 | $450.00 | $530.00 | $370.00 | $220.00 | $300.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **McDermott Will & Emery** | Chicago, IL | 1024 | $835.00 | $525.00 | $710.00 | | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **McElroy, Deutsch, Mulvaney & Carpenter** | Morristown, NJ | 288 | $505.00 | $325.00 | $440.00 | $325.00 | $200.00 | $295.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **McGuireWoods** | Richmond, VA | 941 | $725.00 | $450.00 | $595.00 | $525.00 | $285.00 | $360.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **McKenna Long & Aldridge** | Atlanta, GA | 509 | $650.00 | $480.00 | $530.00 | $425.00 | $375.00 | $395.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Michael Best & Friedrich** | Milwaukee, WI | 198 | $650.00 | $260.00 | $445.00 | $350.00 | $190.00 | $275.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Miles & Stockbridge** | Baltimore, MD | 207 | $725.00 | $330.00 | $470.00 | $375.00 | $230.00 | $285.00 | $425.00 | $215.00 | $675.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Miller & Martin** | Chattanooga, TN | 133 | $585.00 | $245.00 | $385.00 | $270.00 | $180.00 | $215.00 | $355.00 | $210.00 | $440.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Morgan, Lewis & Bockius** | Philadelphia, PA | 1334 | $765.00 | $430.00 | $620.00 | $585.00 | $270.00 | $390.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Morris, Manning & Martin** | Atlanta, GA | 142 | $575.00 | $400.00 | $480.00 | | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Morrison & Foerster** | San Francisco, CA | 1010 | $1195.00 | $595.00 | $865.00 | $725.00 | $230.00 | $525.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Nixon Peabody** | Boston, MA | 612 | $850.00 | $295.00 | $520.00 | $550.00 | $180.00 | $300.00 | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | # | | | | | | | | | | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | Norton Rose Fulbright | | | $900.00 | $525.00 | $775.00 | $515.00 | $300.00 | $400.00 | | | | National Law Journal, December 2013 | Location and Average FTE Attorneys' data not available due to merger in 2013. Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Nutter McClennen & Fish | Boston, MA | 135 | $715.00 | $470.00 | $575.00 | $460.00 | $295.00 | $375.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | O'Melveny & Myers | Los Angeles, CA | 738 | $950.00 | $615.00 | $715.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Orrick, Herrington & Sutcliffe | San Francisco, CA | 977 | $945.00 | $305.00 | $625.00 | $675.00 | $170.00 | $310.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Parker Poe Adams & Bernstein | Charlotte, NC | 178 | $500.00 | $425.00 | $450.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Patton Boggs | Washington, DC | 485 | $780.00 | $490.00 | $665.00 | $475.00 | $325.00 | $405.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Paul Hastings | New York, NY | 899 | $900.00 | $750.00 | $815.00 | $755.00 | $335.00 | $540.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Paul, Weiss, Rifkind, Wharton & Garrison | New York, NY | 803 | $1120.00 | $760.00 | $1040.00 | $760.00 | $250.00 | $600.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Pepper Hamilton | Philadelphia, PA | 493 | $850.00 | $475.00 | $630.00 | $460.00 | $245.00 | $360.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Perkins Coie | Seattle, WA | 823 | $940.00 | $320.00 | $600.00 | $595.00 | $215.00 | $405.00 | $565.00 | $270.00 | $790.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Pillsbury Winthrop Shaw Pittman | Washington, DC | 609 | $1070.00 | $615.00 | $865.00 | $860.00 | $375.00 | $520.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Polsinelli | Kansas City, MO | 573 | $750.00 | $320.00 | $410.00 | $340.00 | $220.00 | $265.00 | $370.00 | $300.00 | $425.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | Attorneys | | | | | | | | | | Source | Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Proskauer Rose** | New York, NY | 746 | $950.00 | $725.00 | $880.00 | $675.00 | $295.00 | $465.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Quarles & Brady** | Milwaukee, WI | 413 | $600.00 | $350.00 | $470.00 | $600.00 | $210.00 | $335.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Quinn Emanuel Urquhart & Sullivan** | New York, NY | 697 | $1075.00 | $810.00 | $915.00 | $675.00 | $320.00 | $410.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Reed Smith** | Pittsburgh, PA | 1468 | $945.00 | $545.00 | $710.00 | $530.00 | $295.00 | $420.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Richards, Layton & Finger** | Wilmington, DE | 138 | $850.00 | $475.00 | $660.00 | $450.00 | $250.00 | $350.00 | $465.00 | $450.00 | $475.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Riker Danzig Scherer Hyland & Perretti** | Morristown, NJ | 151 | $495.00 | $430.00 | $455.00 | $295.00 | $210.00 | $250.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Robinson & Cole** | Hartford, CT | 209 | $490.00 | $285.00 | $410.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Rutan & Tucker** | Costa Mesa, CA | 139 | $675.00 | $345.00 | $490.00 | $500.00 | $230.00 | $320.00 | $490.00 | $435.00 | $575.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Saul Ewing** | Philadelphia, PA | 226 | $850.00 | $365.00 | $530.00 | $575.00 | $225.00 | $340.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Sedgwick** | San Francisco, CA | 347 | $615.00 | $305.00 | $425.00 | $475.00 | $250.00 | $325.00 | $450.00 | $350.00 | $660.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Seward & Kissel** | New York, NY | 152 | $850.00 | $625.00 | $735.00 | $600.00 | $290.00 | $400.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Seyfarth Shaw** | Chicago, IL | 753 | $860.00 | $375.00 | $610.00 | $505.00 | $225.00 | $365.00 | $470.00 | $245.00 | $800.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | Attorneys | | | | | | | | | | Source | Notes |
|------|------|----------|-----------|--|--|--|--|--|--|--|--|--|--------|-------|
| 2013 | Sheppard, Mullin, Richter & Hampton | Los Angeles, CA | 521 | $875.00 | $490.00 | $685.00 | $535.00 | $275.00 | $415.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Shumaker, Loop & Kendrick | Toledo, OH | 226 | $585.00 | $295.00 | $405.00 | $335.00 | $175.00 | $260.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Shutts & Bowen | Miami, FL | 221 | $660.00 | $250.00 | $430.00 | $345.00 | $195.00 | $260.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Skadden, Arps, Slate, Meagher & Flom | New York, NY | 1735 | $1150.00 | $845.00 | $1035.00 | $845.00 | $340.00 | $620.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Snell & Wilmer | Phoenix, AZ | 422 | $695.00 | $295.00 | $495.00 | $420.00 | $185.00 | $280.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Squire Sanders | Cleveland, OH | 1257 | $950.00 | $350.00 | $655.00 | $530.00 | $250.00 | $355.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Stevens & Lee | Reading, PA | 167 | $800.00 | $525.00 | $625.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Stinson Morrison Hecker | Kansas City, MO | 280 | $695.00 | $290.00 | $475.00 | $650.00 | $185.00 | $280.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Stoel Rives | Portland, OR | 371 | $690.00 | $320.00 | $475.00 | $425.00 | $190.00 | $280.00 | $410.00 | $320.00 | $550.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Strasburger & Price | Dallas, TX | 208 | $770.00 | $225.00 | $420.00 | $450.00 | $215.00 | $260.00 | $445.00 | $225.00 | $600.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Taft, Stettinius & Hollister | Cincinnati, OH | 303 | $535.00 | $285.00 | $415.00 | $475.00 | $200.00 | $285.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Thompson & Knight | Dallas, TX | 281 | $740.00 | $425.00 | $535.00 | $610.00 | $240.00 | $370.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| Year | Firm | Location | No. | Col1 | Col2 | Col3 | Col4 | Col5 | Col6 | Col7 | Col8 | Col9 | Source | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | Thompson Coburn | St. Louis, MO | 305 | $510.00 | $330.00 | $440.00 | $350.00 | $220.00 | $270.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Troutman Sanders | Atlanta, GA | 575 | $975.00 | $400.00 | $620.00 | $570.00 | $245.00 | $340.00 | $510.00 | $325.00 | $675.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Ulmer & Berne | Cleveland, OH | 178 | $415.00 | $315.00 | $380.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Varnum | Grand Rapids, MI | 134 | $465.00 | $290.00 | $390.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Venable | Washington, DC | 501 | $1075.00 | $470.00 | $660.00 | $575.00 | $295.00 | $430.00 | $565.00 | $435.00 | $810.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Vinson & Elkins | Houston, TX | 677 | $770.00 | $475.00 | $600.00 | $565.00 | $275.00 | $390.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Waller Lansden Dortch & Davis | Nashville, TN | 165 | $600.00 | $350.00 | $460.00 | $335.00 | $190.00 | $245.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Weil, Gotshal & Manges | New York, NY | 1201 | $1075.00 | $625.00 | $930.00 | $790.00 | $300.00 | $600.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | White & Case | New York, NY | 1900 | $1050.00 | $700.00 | $875.00 | $1050.00 | $220.00 | $525.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Wiley Rein | Washington, DC | 272 | $950.00 | $550.00 | $665.00 | $535.00 | $320.00 | $445.00 | $580.00 | $380.00 | $800.00 | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Williams Mullen | Richmond, VA | 231 | $410.00 | $360.00 | $385.00 | $350.00 | $260.00 | $295.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | Willkie Farr & Gallagher | New York, NY | 540 | $1090.00 | $790.00 | $950.00 | $790.00 | $350.00 | $580.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2013 | **Wilmer Cutler Pickering Hale and Dorr** | Washington, DC | 961 | $1250.00 | $735.00 | $905.00 | $695.00 | $75.00 | $290.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Winston & Strawn** | Chicago, IL | 842 | $995.00 | $650.00 | $800.00 | $590.00 | $425.00 | $520.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Wolff & Samson** | West Orange, NJ | 129 | $450.00 | $325.00 | $400.00 | $450.00 | $225.00 | $340.00 | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |
| 2013 | **Wyatt, Tarrant & Combs** | Louisville, KY | 165 | $500.00 | $280.00 | $418.00 | | | | | | | National Law Journal, December 2013 | Full-time equivalent attorney numbers and the largest U.S. office are from the NLJ 350 published in April 2013. |

Copyright 2013 ALM Media properties, LLC. All rights reserved.

888-770-5647
www.alm.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No. 0:13-cv-62496-LENARD/GOODMAN

| | |
|---|---|
| ADELE FERRARA, DANA COOKE, RAHSAAN ASHFORD, ANNE STEIMLE, STEVE TROUT, TERRY SHAPIRO, BENJAMIN BARTELL, ARTHUR KAROS, LARRY ROSENGARTEN, and JOSHUA SEIDMAN, *individually and on behalf of all others similarly situated*, | **EGGNATZ DECLARATION IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND INCENTIVE AWARDS** |
| Plaintiffs, | |
| – against – | |
| SNYDER'S-LANCE, INC., and SNACK FACTORY, LLC, a wholly-owned subsidiary of SNYDER'S-LANCE, INC. | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746, we, Joshua H. Eggnatz, Melissa W. Wolchansky, and Michael R. Reese, hereby declare and state as follows:

1.	I, Joshua H. Eggnatz, am one of the Co-Class Counsel[1] and counsel of record for Plaintiffs Adele Ferrara, Dana Cooke, Rahsaan Ashford, Anne Steimle, Steve Trout, Terry Shapiro, Benjamin Bartell, Arthur Karos, Larry Rosengarten, and Joshua Seidman, and we respectfully submit this Joint Declaration in Support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Expenses, and Incentive Awards (filed concurrently herewith). Except as otherwise noted, I have personal knowledge of the facts set forth in this Declaration, and we could testify competently to them if called upon to do so.

---

1.	Unless otherwise indicated, all capitalized terms have the same meaning as in the Settlement Agreement. (*See* Stip. Settlement, ECF No. 199-2.) References to "§ __" are to sections in the Settlement Agreement.

2.      The instant Settlement arises from litigation in which Plaintiffs challenged the advertising and labeling of Defendant's Products as deceptive and misleading. Specifically, Plaintiffs challenged the subject Products' Natural Labels. Plaintiffs alleged the advertising and labeling of the Products are deceptive and misleading because the Products contain artificial, synthetic, and/or genetically modified ingredients, which Plaintiffs maintain are not natural within the common understanding of an objective consumer.

3.      On November 13, 2013, Plaintiffs filed the instant Action in the United States District Court for the Southern District of Florida. On November 10, 2014, the *Seidman v. Snack Factory, LLC*, Case No. 14-cv-62547 action was filed in Southern District of Florida. On April 1, 2015, the *McDonough v. Snyder's-Lance, Inc.*, Case No. 15-cv-01751 action was filed in the Eastern District of New York. On June 10, 2015, the *Korn, et al. Snyder's-Lance, Inc.*, Case No. 3:15-cv-02593 action was filed in the Northern District of California. (Collectively referred to "Snyder's-Lance Actions.") All Snyder's Lance Actions were filed by overlapping counsel, each was brought on behalf of the named Plaintiffs and all others similarly situated, and all involved overlapping facts and legal theories.

4.      Plaintiffs brought the Snyder's-Lance Actions to recover damages and to obtain declaratory and injunctive relief on behalf of themselves and all others similarly situated. Plaintiffs successfully achieved both of these results.

5.      Defendant denies that it falsely advertised or marketed the Products, denies all claims made against it, denies that it violated any laws, denies that the Products' labeling is false or misleading, and denies that Plaintiffs or the Settlement Class Members have suffered damages or been harmed in any way.

6.      Class Counsel's practices are concentrated on consumer class actions in both

federal and state courts, with a focus on food and dietary supplement litigation.

7.       Class Counsel's experience in representing consumers in other similar class actions has facilitated the successful prosecution of this action and the adequate representation of the Settlement Class. Indeed, Class Counsel regularly engage in major complex litigation involving allegedly deceptively labeled food products and other consumer product class litigation, and courts throughout the country have appointed them to represent litigation and settlement classes.

8.       Class Counsel have worked diligently to obtain relief for the Settlement Class.

9.       The Parties engaged in extensive formal discovery, as well as informal and voluntary exchanges of information.

10.       Class Counsel have adequately represented the interests of Plaintiffs and the Settlement Class Members in this litigation. Class Counsel have conducted thirteen fact and expert witness depositions, conducted legal and factual investigation into Plaintiffs' claims and the claims of a putative class of similarly situated consumers, prepared discovery and analyzed Defendant's internal documents and records consisting of over 150,000 discovery documents, worked closely with retained experts in connection with Plaintiffs' claims, attended mediation and engaged in months of arm's-length negotiations, prepared and responded to various dispositive, class certification, and pre-trial related motions, and worked with Defendant and a professional claims administrator to reach an unopposed motion for preliminary approval of the class action Settlement, as well as the notice and administration plan. The Snyder's-Lance Actions, collectively, were heavily litigated and adversarial.

11.       The Parties have briefed four motions to dismiss, class certification, summary judgment, and various pre-trial motions.[2] Although contentious at times, and despite two mediation

_____

2.       In the instant action, Plaintiffs' Supplemental Motion for Class Certification (ECF No. 74)

sessions proving unsuccessful, the Parties continued to engage in lengthy and extensive settlement negotiations. At all times, the Parties' negotiations were adversarial, non-collusive, and at arm's length. Ultimately, following full merits, class certification, and expert discovery, as a result of the Parties' efforts, a settlement was finally reached that provides meaningful monetary and injunctive relief to a nationwide class of consumers of Defendant's Products. At all times, the Parties' negotiations were adversarial, non-collusive, and at arm's length.

12.     Moreover, prior to litigation, Class Counsel undertook an initial legal and factual investigation that included interviewing Plaintiffs, reviewing the Products' labels and ingredients at issue, consulting with industry experts, and conducting legal and factual research into Plaintiffs' claims on behalf of a putative class of similarly situated consumers. Because Defendant was initially unwilling to provide class-wide relief to the putative class, Plaintiffs have been vigorously litigating this Action since it was filed on November 13, 2013.

13.     The Parties' Settlement is memorialized in the Stipulation of Class Action Settlement, which is attached as Exhibit B to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 199-2)

14.     The Settlement terms are the product of significant give and take by the settling Parties, and the Settlement was negotiated at arm's length.

15.     The Settlement, among other things, includes Defendant's commitment to provide a guaranteed Common Fund in the amount of $2,762,500 to pay eligible Settlement Class

---

and Defendant's Partial Motion to Dismiss (ECF No. 156) are fully briefed. The following Motions are partially briefed: Motion for Summary Judgment (ECF No. 171); Motion in Limine to Strike Portions of the Expert Report of Charles M. Benbrook and to Limit His Trial Testimony (ECF No. 168); Motion in Limine to Exclude Expert Report and Testimony of Michael B. Mazis (ECF No. 180); Motion to Exclude the Expert Testimony of Carol Scott (ECF No. 181); and Motion to Strike the Declaration Testimony of Carol Scott (ECF No. 182).

Members' Claims and to implement the Settlement. From the Common Fund, Defendant shall pay all costs associated with the Settlement, including (i) Approved Claims, (ii) Claims Administration Expenses (including the costs of the Notice Plan), and (iii) the Fee and Expense Award and the Incentive Awards.

16.     Eligible Settlement Class Members may each recover, without proof of purchase, $1 for each of their households' purchases of the Products, up to a maximum of $10. With proofs of purchase, eligible Settlement Class Members may each recover an additional $1 for each of their households' purchases of the Products beyond the first 10 purchases, up to a maximum of $20. This amount constitutes a significant percentage of the average purchase price for the Products and is more than consumers would likely have received if the case had proceeded to trial.

17.     Not only does the Settlement provide immediate monetary relief to the Settlement Class, the Settlement also calls for Defendant to provide substantial injunctive relief relating to the Products, including revising its advertising and marketing statements. Specifically, Defendant shall cease using the statements "All Natural," "Natural," "Naturally," "All Natural Ingredients," or any other derivation of "natural," including "nothing artificial," and/or "no preservatives," in connection with the sale, marketing, and labeling of the Products. If Defendant chooses to resume using a Natural Label, it shall ensure the Products are not made with ingredients derived from GMOs or GMO Crops.

18.     Given the robust Notice Plan, the ease with which Settlement Class Members may submit Claims, and the strong prospective measures the Settlement affords, the results the Settlement achieves are well suited for Court approval.

19.     The Settlement, as set forth more fully in the Settlement Agreement, provides substantial relief to the Settlement Class and is an exceptional result given the uncertainty

associated with this sort of litigation involving low-cost consumable food goods.

20.     Indeed, although Counsel would have vigorously opposed and distinguished recent case law, there is a rising tide of decisions that make success on behalf of a class in matters such as the instant case more difficult to achieve.

21.     Thus, Class Counsel believes that avoiding the uncertainty, delay, and further expense of protracted litigation and appeal is a substantial factor supporting the Settlement, which provides immediate benefits to the Settlement Class Members, both financially and in the form of injunctive relief.

22.     Based upon the results obtained and pursuant to the Settlement Agreement, Class Counsel are entitled to request that the Court award a Fee and Expense Award in amount of $890,000.

23.     Importantly, Class Counsel did not negotiate the Fee and Expense Award with Defendant until *after* the Parties reached agreement as to the terms of the Settlement benefiting the Settlement Class Members.

24.     This combined attorneys' fee and expense award represents 32% of the total Common Fund. As briefed in the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Award of Attorneys' Fees, Litigation Expenses, and Incentive Awards, this is within the range permitted by prevailing case law under a "common fund" approach.

25.     Moreover, irrespective of the "common fund" approach, and even though the Court is not required to engage in a lodestar "cross check," Class Counsel's request for attorneys' fees and reimbursement of litigation expenses is more than justified based on the sheer number of hours and costs Class Counsel expended in prosecuting the Snyder's-Lance Actions, all with the potential for no recovery at all.

26.     In total, Class Counsel have collectively billed 3,198.65 hours, which constitutes approximately $1,740,203.50 in collective lodestar. The hourly rates of Class Counsel and Plaintiffs' Counsel are comparable to those approved in other cases in the State of Florida and this District.

27.     The hours Class Counsel and Plaintiffs' Counsel billed are reasonable. As set forth below, prosecuting the Snyder's-Lance Actions entailed motion practice, fact and expert discovery, and trial preparation.

### Eggnatz, Lopatin & Pascucci, LLP

28.     The law firm of Eggnatz, Lopatin & Pascucci, LLP ("ELP") has billed 791 hours, totaling $452,875.00 in fees to date.

29.     Below is a summary of hours ELP has spent on this litigation to date:

| Timekeeper | Hours to Date | Rate Per Hour | Total Amount Billed |
|---|---|---|---|
| Joshua H. Eggnatz (Partner) | 350.00 | $500.00 | $175,000.00 |
| Benjamin M. Lopatin (Partner) | 296.00 | $500.00 | $148,000.00 |
| Michael J. Pascucci (Partner) | 136.00 | $500.00 | $68,000.00 |
| Amy Ridge (Associate) | 153.00 | $375.00 | $57,375.00 |
| Michael T. Fraser (Of Counsel) (The Fraser Law Firm, P.C.) | 9 | $500.00 | $4,500.00 |
| **TOTAL** | 791 | | 452,875.00 |

30.     Additionally, ELP has incurred out-of-pocket expenses in the amount of $25,305.48 to date.

31.     Below is a summary of the out-of-pocket expense incurred to-date:

| Category | Amount |
|---|---|
| Court/Service of Process fees | 1,325.00 |
| Experts & Product Testing | 15,048.00 |
| Travel | 2,506.18 |
| Depositions/Transcripts | 4,070.05 |
| Mediation | 2,156.25 |
| Photocopies | 200 |
| **TOTAL** | 25,305.48 |

32.     Class Counsel maintained contemporaneous and detailed time record. The time records are kept contemporaneously with time delineated by timekeeper to the tenth of an hour. These detailed time records are kept by my firm according to its usual timekeeping practices. At the Court's request, Class Counsel can provide the Court with these documents and information for *in camera* review

33.     Class Counsel have incurred in total $93,698.61 in out-of-pocket expenses. The categories of expenses for which Class Counsel seek reimbursement are the types of expenses routinely charged to paying clients in the marketplace and, consequently, the full requested amount should be reimbursed. These expenses were integral to the prosecution of this case and include but are not limited to: filing fees, court reporter charges, and attorney service; photocopies; telephone and conference calls; postage and overnight delivery; mediation fees; fees for Plaintiffs' experts; travel expenses (including transportation and lodging both for the attorneys and Plaintiffs); and deposition and hearing transcripts. At the Court's request, Class Counsel can provide the Court with these documents and information for *in camera* review.

34.     Class Counsel have not been reimbursed for any costs incurred in the litigation and will not be reimbursed unless the Court grants their request for the Fee and Expense Award.

35.     Additionally, Plaintiffs' future costs (*e.g.*, travel to the Final Approval Hearing) are not included in the amounts set forth above.

36.     Given the contentious history of the litigation and the results achieved, the number of hours is reasonable, particularly because Class Counsel will only be compensated for a portion of the time.

37.     Class Counsel took appropriate steps to avoid duplication of effort and to efficiently

manage, staff, assign, and divide the work between four law firms and amongst lower and higher-level attorneys.

38.     If the lodestar approach were applied, this case would justify a multiplier. Considering that a significant multiplier would certainly be justified in this case, Class Counsel's fee request would satisfy a cross-check using the lodestar method.

39.     Moreover, Class Counsel's work is not yet done. Class Counsel still need to, among other things: (1) continue to monitor the notice program, communicate with the Claims Administrator, and respond to Settlement Class Members' inquiries; (2) respond to objections, if any; (3) prepare for and attend the Final Approval Hearing; (4) continue to oversee the claims administration process, including addressing any claim review issues; (5) monitor distribution of benefits to the Settlement Class; and (6) potentially handle post-judgment appeals.

40.     The time Class Counsel spent on the litigation was time that could not be spent on litigating other matters. Class Counsel have worked on this case since 2013. In effect, Class Counsel have provided their legal services to the Settlement Class since that time. Class Counsel have prosecuted this case wholly on a contingency basis, and they did so at great risk of never receiving any compensation, due to the risky nature of class action litigation and the developing law with respect to Rule 23 requirements and the implied ascertainability requirement, "All Natural" food-labeling claims, and calculating class-wide damages.

41.     In addition to the contingent risk of the case, Class Counsel's representation of Plaintiffs and the Settlement Class in this heavily litigated case forced Class Counsel to forego other cases.

42.     Moreover, based on the information provided to by the Claims Administrator, 28,547 claim forms have been submitted to date. There have been zero objections, and zero opt-

outs to the Settlement have been submitted to date.

43.   The Settlement also provides for a $5,000 Incentive Award to each of the representative Plaintiffs who were deposed (*i.e.*, Ferrara, Cooke, Ashford, and Steimle), and a $2,500 Incentive Award to each of the representative Plaintiffs who were not deposed (*i.e.*, Trout, Shapiro, Bartell, Karos, Rosengarten, Seidman, McDonough, Korn, and Brunello). These amounts are reasonable and consistent with the amounts customarily granted in this District and in courts within the Eleventh Circuit. The Class Representatives dedicated their time and effort to pursuing their claims on behalf of putative class members and demonstrated a willingness to participate in the litigation. Plaintiffs also undertook the responsibilities and attendant risks of bringing a representative action, including aiding in investigating their claims, responding to discovery, sitting for contentious depositions, and communicating with Class Counsel on a regular basis. Plaintiffs' work in this litigation resulted in significant benefits to the Settlement Class Members. Additionally, Plaintiffs began preparing for trial leading up to the Settlement and carefully reviewed the Settlement documents to understand the terms of the Settlement and the benefits to the Settlement Class.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 14, 2016.

Davie, Florida                  */s/ Joshua H. Eggnatz*
                                Joshua H. Eggnatz
                                Eggnatz, Lopatin & Pascucci, LLP

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

### CASE NO.: 9:14-cv-80005-BB

| | |
|---|---|
| DEENA KLACKO, individually and on behalf of all others similarly situated, | : |
| | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : |
| | : |
| DIAMOND FOODS, INC., a California Corporation | : |
| | : |
| | : |
| *Defendant.* | : |
| | : |

"Class Action"

## PLAINTIFFS' MOTION FOR REASONABLE ATTORNEY'S FEES, EXPENSES, AND INCENTIVE AWARDS

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………………………...4

II.     BACKGROUND   ………………………………………………………………6

        A.      Plaintiffs' Allegations and the Litigation History…..……………………..6

        B.      The Settlement Achieves Exceptional Relief for the Settlement Class…………...7

III.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEY'S FEES AND
EXPENSES BECAUSE THEY ARE REASONABLE………………………………………8

        A.      Class Counsel Devoted a Substantial Amount of Time and Effort to This Case and
        Were Consequently Precluded from Accepting Other Employment……………………10

        B.      The Settlement Achieves Exceptional Relief for the Settlement Class…………11

        C.      Class Counsel Achieved an Excellent Result for the Plaintiff Class……………13

        D.      The Requested Fee Is Consistent with Those Awarded in Other Similarly
        Complex Class Settlements in this Circuit……………………………………………14

        E.      A High Level of Skill Was Necessary to Perform the Legal Services Properly…15

IV.     THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE
APPROVED………………………………………………………………………………...16

V.      CONCLUSION…………………………………………………………………17

## TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185 (S.D. Fla. 2006)................ 13, 14, 16

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985)...................................................... 16

*Bohlke v. Shearer's Foods, Inc.*, No. 9:14-cv-80828, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015)
..................................................................................................................................................... 12

*Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991)..................................... 8, 9, 10

*Chin v. Gen. Mills, Inc.*, No. 12-2150 2013 WL 2420455 (D. Minn. June 3, 2013).................... 13

*Cohn v. Nelson*, 375 F. Supp.2d 844 (E.D. Mo. 2005).................................................................... 9

*David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 628362 (S.D. Fla. Apr. 15, 2010)
..................................................................................................................................................... 16

*Faught v. Home Shield Corp.*, 668 F.3d 1233 (11th Cir 2011) ........................................... 9, 10, 14

*Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677, 2008 WL 649124 (S.D. Fla. Jan.
31, 2008) ..................................................................................................................................... 12

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................................................... 9

*In re Checking Overdraft Litig.*, 830 F. Supp.2d 1330 (S.D. Fla. 2011) ................................ passim

*In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ......... 16

*In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323 (.S.D. Fal. 2001)...................................... 12, 15

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ....................................................... 16

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).......................... passim

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3d Cir.
1976) ........................................................................................................................................... 13

*Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429 (11th Cir. 2012) ................. 10, 14

*Pelayo v. Nestle USA, Inc.*, 989 F. Supp.2d 973 (C.D. Cal. 2013)............................................... 13

*Pinto v. Princess Cruise Line, Ltd.*, 513 F. Supp.2d, 1334 (S.D. Fla. 2007)................... 12, 14, 16

*Schlage Lock Co.*, 505 F. Supp.2d 704 (D. Colo. 2007)............................................................... 11

*Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) ...................................... 10

*Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012)................. 14

*Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530 (11th Cir. 1983) ................................................. 11

**Rules**

Fed. R. Civ. P. 23(h) .............................................................................................................. 4, 8

Fed. R. Civ. P. 54(d)(2)................................................................................................................. 4

In accordance with this Court's October 30, 2014 Order Granting Preliminary Approval of Class Action Settlement [Doc. 48], and pursuant to Rules 23(h) and 54(d)(2), *Federal Rules of Civil Procedure*, Plaintiffs, DEENA KLACKO, DOMINIKA SURZYN, and RICHARD HALL (collectively, the "Plaintiffs"), request the Court grant Plaintiffs' Motion for Reasonable Attorney's Fees, Expenses, and Incentive Awards ("Motion"),[1] and in support thereof states the following:

## I.      INTRODUCTION

Plaintiffs and Class Counsel urge this Court to grant this motion for fees, expenses and incentive awards to the named representative plaintiffs in conjunction with the final approval the Kettle Brand® Class Action Settlement reached in this matter, which provides all Class members with meaningful relief and addresses allegedly disputed ingredients in and advertising of consumer food products, on a nationwide basis.  This Motion is made pursuant to the Kettle Brand® Class Action Settlement Agreement reached in this class action lawsuit (copy attached as Exhibit 1).  The Settlement arises from litigation in which Plaintiffs challenged the advertising and labeling of Kettle Brand® products as deceptive and misleading.  Specifically, Plaintiffs challenged Kettle Brand® products labeled as "All Natural," Natural," "Naturally," "Reduced Fat," and/or "___% Less Fat" (collectively, the "Products").  Plaintiffs alleged that the advertising and labeling of the Products containing "natural" or similar labels are deceptive and misleading because those Products contain artificial, synthetic, and/or genetically modified ingredients, which, plaintiffs maintain, are not natural within the common understanding of an

---

1.      Pursuant to Rule 23(h), Fed. R. Civ. P., Class Counsel file this Motion in advance of the June 11, 2015, deadline for objecting to the Settlement.  Upon filing, a copy of this Motion for Approval will be posted to the Settlement Website, www.chipsettlement.com, where it can easily be accessed by Members of the Class.

objective consumer.  Plaintiffs also contended that the Product advertising and labeling "Reduced Fat" and "___% Less Fat" are similarly deceptive and misleading because Defendant improperly references other non-comparable food in making such claims.  Plaintiffs brought the actions to recover damages and obtain declaratory and injunctive relief. Defendant denies that it falsely advertised or marketed the Products, denies all claims made against it, denies that it violated any laws, denies that its labeling is false or misleading, and denies that Plaintiffs or the Class Members have suffered damages or that they have been harmed in any way.

On October 30, 2014, the Court preliminarily certified the Settlement Class, appointed Class Representatives, appointed Class Counsel, and granted preliminary approval to the Settlement reached by the Parties.  The Settlement was reached after over a year of litigation, a full day of mediation with an experienced mediator,  and subsequent lengthy and hard-fought post-mediation negotiations, also facilitated by the mediator.  The Settlement provides substantial and meaningful relief to the Settlement Class, including a multimillion dollar common fund and injunctive relief, all discussed in more detail below.  The details of the Settlement are set out in the Settlement Agreement that is attached as **Exhibit 1**.

Approval of the proposed Settlement is all the more warranted because the Settlement involves the resolution of complex issues against a rising tide of decisions--from this Court and across the country--adverse to Plaintiffs' position--decisions Class Counsel would certainly distinguish, but their opponent would just as vigorously assert.  For the reasons set forth below, the Class Representative and Class Counsel are asking this Court to award the requested fees, expenses and incentive awards for the Class Representatives in conjunction with final approval of the Settlement.

## II.   BACKGROUND

### A.   Plaintiffs' Allegations and the Litigation History

The instant action is the first filed of three related actions against Defendant.  The other two actions are both pending in the United States District Court for the Northern District of California:  *Dominika Surzyn v. Diamond Foods, Inc.*, Case No. 4:14-cv-136 (the "*Surzyn* Action"), and *Richard Hall v. Diamond Foods, Inc.*, Case No. 3:14-cv-02148 (the "*Hall* Action").  The Settlement reached by the Parties results in the final disposition of all three actions.

These putative class actions all involve the sale of the Products and overlapping alleged facts and legal theories.  All three of the actions faced motions to dismiss and replies to the responses in opposition thereto.  *See* [Docs. 9, 15, 31, 38], Exhibit 2; *Hall* Action [Docs. 16, 22, 29], Exhibit 3; *Surzyn* Action [Docs. 15, 21], Exhibit 4.  Ultimately, and after sometimes multiple rounds of pleading and briefing, Plaintiffs prevailed on some causes of action against the pleading-related motions.

While the motions to dismiss were pending, the Parties engaged in the exchange of informal discovery.  Specifically, Defendant provided Plaintiffs with  confidential business information that aided in the resolution of these cases.  Resolution required extensive negotiations, a full day of mediation with experienced mediator David Lichter, and then follow-up mediation assistance from Mr. Lichter before the Parties ultimately reached the Settlement that is before this Court.

As a result of the Settlement reached by the Parties, on October 22, 2014, Plaintiff Deena Klacko filed her Unopposed Motion for Preliminary Approval of Class Action Settlement [Doc.

44]. On October 30, 2014, this Court entered its Oder Granting Motion for Preliminary

Approval of Class Action Settlement. [Doc. 48].

### B. The Settlement Achieves Meaningful Monetary and Non-Monetary Relief for the Settlement Class

The Settlement reached by the Parties involves both monetary and injunctive relief.

Specifically, Defendant has agreed to pay claimants $1.00 per Kettle Brand® product purchased,

up to a maximum of $10.00 per claimant without requiring proof of purchase, or up to a

maximum of $20.00 per claimant with proof of purchase. Defendant has agreed to satisfy all

valid Claims made, up to $2,750,000, plus up to $300,000 for administration expenses, $7,500

for incentive awards, and $775,000 for attorneys' fees. For example, if Approved Claims are

$2,800,000, administration expenses are $300,000, incentive awards are $7,500, and attorneys'

fees are $775,000, Defendant's cash payments will total $3,832,500 Any Residual Amount, as

that term is defined in the Settlement Agreement, will be applied towards Diamond Foods, Inc.

food products, which Defendant will donate to charity, namely, Feeding America.

In addition to this monetary relief, Defendant has agreed that within one (1) calendar year

after entry of the Final Judgment and Order Approving Settlement, it will provide its "Natural

Promise" criteria to its suppliers, and will require those suppliers to verify that their ingredients

comply with those criteria. Defendant will also create a database to track ingredients and

ingredient suppliers, and will conduct audits at least once annually to confirm that Defendant's

suppliers are in compliance with Defendant's "Natural Promise" criteria. Defendant further

promises to employee reasonable efforts to seek Non-GMO Project approval for all Products

where eligibility for non-GMO Project approval is practical.

Additionally, with regard to Defendant's "Reduced Fat" and "___% Fat Free" claims,

Defendant agrees to place the requisite comparison statement at the location on the packaging

where the applicable claim is most prominently displayed. Moreover, Defendant will provide reports to the Court (i) at the end of the six (6) month period following entry of the Final Judgment and Order Approving Settlement; and (ii) within one (1) calendar year following Final Judgment and Order Approving Settlement, regarding its compliance with these above-stated injunctive relief provisions.

Plaintiffs contend that in the context of food labeling class action settlements, this type of injunctive relief is unusual. This form of injunctive relief provides a lasting benefit to the Settlement Class years beyond the date of settlement and distribution of monetary relief.

In exchange for the Settlement relief, members of the Settlement Class will release Defendant and its former and current subsidiaries, affiliates, divisions, parents, and other affiliated companies, among others, from all claims, obligations, or damages that were or could have been sought in this litigation against Defendant for damages related to Plaintiffs' claims during the Class Period.

## III.    THE COURT SHOULD APPROVE THE AGREED-UPON ATTORNEY'S FEES AND EXPENSES BECAUSE THEY ARE REASONABLE

Rule 23(h), *Federal Rules of Civil Procedure*, authorizes, pursuant to law or the parties' agreement, the award of reasonable attorney's fees to class counsel who prosecute the case. Not only does the Settlement here provide for the award of reasonable attorney's fees from the Settlement Fund, but "[i]t is well-established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Overdraft Litig.*, 830 F. Supp.2d 1330, 1358 (S.D. Fla. 2011); *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a

class action in which a common fund is created are entitled to compensation for their services

from the common fund, but the amount is subject to court approval").

The reasonableness of a settlement is determined within the sound discretion of the

district court. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). However, settlements are

strongly encouraged. *Id.* ("A request for attorneys' fees should not result in a second major

litigation. Ideally, of course, litigants will settle the amount of the fee"); *see also Cohn v.

Nelson*, 375 F. Supp.2d 844, 854 (E.D. Mo. 2005) ("[W]here, as here, the parties have agreed on

the amount of attorneys' fees and expenses, courts give the parties' agreement substantial

deference").

Here, the Settlement resulted in the creation of an initial $3 million monetary Settlement

Fund for the benefit of the Settlement Class. Accordingly, attorney's fees are calculated based on

a "reasonable percentage of the fund established for the benefit of the class."[2] *Faught v. Home

Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir 2011) (citing *Camden I*, 946 F.2d at 744; *In re

Checking Account Overdraft Litig.*, 830 F. Supp.2d at 1358 ("In the Eleventh Circuit, class

counsel is awarded a percentage of the fund generated through a class action settlement").

Importantly, under the terms of the Settlement Agreement, Defendant can be required to make

additional deposits of up to $832,500 to the initial $3 million common fund, for the purpose of

guaranteeing that up to $2.75 million is available to pay valid claims. Thus, under the Settlement

Agreement the total value of the initial $3 million common fund could grow to $3,832,500..

---

2.      The calculation of attorney's fees is based on a percentage of the *entire* initial $3 million
Settlement Fund, not the amount claimed against it. *See Boeing Co.*, 444 U.S. at 478 ("A litigant
or lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund
*as a whole*") (emphasis added); *see also Waters v. Intl Precious Metals Corp.*, 190 F.3d 1291,
1297 (11th Cir. 1999) ([C]lass counsel are entitled to a reasonable fee based on the funds
potentially available to be claimed, regardless of the amount actually claimed"). Here the
Settlement Agreement provides that the common fund may grow as large as $3,832,500

While the Eleventh Circuit has not set a particular percentage of a common fund from which attorney's fees may be awarded, "the majority of common fund fee awards fall between 20% to 30% of the fund" and the Eleventh Circuit has "directed district courts to view this range as a 'benchmark' which may be adjusted in accordance with the individual circumstances of each case, using the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999); *see also Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. App'x. 429, 435 (11th Cir. 2012) ("Pack's objection to the fee is likewise without merit. The $3.64 million fee award is approximately 25% of the 'common fund' and 'well-settled law from this court [states] that 25% is generally recognized as a reasonable fee award in common fund cases") (quoting *Faught*, 668 F.3d at 1243).

In ruling on a request for an award of fees and expenses, the Court should consider the so-called "*Johnson* Factors." The twelve "*Johnson* Factors" are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772.

### A. Class Counsel Devoted a Substantial Amount of Time and Effort to This Case.

The first, fourth, and seventh *Johnson* factors—the time and labor involved, the preclusion of other employment, and the time limitations imposed, respectively—are interrelated inquires, and each support the reasonableness of Class Counsel's fee request.

10

Class Counsel has opposed every motion to dismiss lodged against the respective

Plaintiff's pleadings and ultimately prevailed against Defendant's attacks with respect to some

causes of action. Additionally, Class Counsel has engaged in on-going negotiations since early

in this case, including the exchange of informal discovery, the attendance at a full-day mediation,

and numerous telephone negotiations, including telephone conferences with the mediator. This

is all in addition to extensive pre-suit investigation and research, which included legal research

involving diverse substantive state and federal law, consultations with experts, client meetings,

and preliminary consumer surveys. Plaintiffs request that the Court take judicial notice of the

contents of the courts' files in the three matters resolved by the Kettle Brand® Settlement. True

and correct copies of the Docket History Reports are attached as Exhibits 2, 3, and 4 for the

Court's convenience. The contents of these official files are evidence of the time and energy

devoted to this litigation by Class Counsel.

During the pendency of this case, work performed on this case by Class Counsel has

precluded Class Counsel from devoting that time and those resources to litigating other matters.

*Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the

expenditure of 1,000 billable hours, often in significant blocks of time, "necessarily had some

adverse impact upon the ability of counsel for plaintiff to accept other work"). Indeed, the *Yates*

Court further acknowledged that such devotion of time and resources to complex matters, like

the instant case "should raise the amount of the award"). *Id.*; *see also Schlage Lock Co.*, 505 F.

Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* Court concluded that priority work

that delays a lawyer's other work is entitled to a premium"). Accordingly, the amount of time

and labor devoted to this case supports the reasonableness of Class Counsel's request.

**B.** **The Case Involved Difficult Issues Concerning a Developing Area of Law, and the Risk of Nonpayment and Not Prevailing on the Claims Was High**

11

The second, sixth, and tenth *Johnson* factors—the novelty and difficulty of the issues raised in the litigation, whether the fee was contingent, and the "undesirability" of the case, respectively—are also interrelated and support the requested fee award. "A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Line, Ltd.*, 513 F. Supp.2d, 1334, 1339 (S.D. Fla. 2007). "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1364 (citing *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1335 (.S.D. Fal. 2001)). Ultimately, the "attorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677, 2008 WL 649124, at * 14 (S.D. Fla. Jan. 31, 2008) (citing *Pinto*, 513 F. Supp.2d at 1339).

Plaintiffs' claims have been fraught with risk since their respective inception, as evidenced by the numerous motions to dismiss Plaintiffs' complaints that met each action. Furthermore, claims similar to Plaintiffs' claims, but involving different defendants and different products, are developing in the various federal and state courts and are still being met with vigorous opposition. *See e.g.*, *Bohlke v. Shearer's Foods, Inc.*, No. 9:14-cv-80828, 2015 WL 249418 (S.D. Fla. Jan. 20, 2015) (order granting in part and denying in part defendant food producer's motion to dismiss plaintiff's claims related to similar "all natural" food labels on a multitude of grounds, including jurisdictional, preemption, and failure to state a claim). Should the cases have proceeded to the certification and merits stage, the parties and their respective experts would have battled over the Rule 23 requirements. The results of those efforts, while unknown, would have been fraught with risk, particularly in light of recent decisions from the relevant

jurisdictions where these cases have been pending. *Randolph v. Smucker*, No. 9:13-cv-80581, 2014 WL 7330430 (S.D. Fla. Dec. 23, 2014); *In re Clorox*, 301 F.R.D. 436 (N.D. Cal. 2014); *Bruton v. Gerber*, No. 5:12-cv-02412, 2014 WL 2860995 (N.D. Cal. June 23, 2014); *Allen v. Conagra*, No. 13-cv-01279-VC (N.D. Cal. Jan. 8, 2015).

Although Class Counsel were able to achieve fair, adequate and reasonable relief for the Settlement Class in this case, the relief obtained cannot be viewed in a vacuum. *See In re Checking Overdraft Litig.*, 830 F. Supp.2d at 1364 ("Undesirability and relevant risks must be evaluated from the standpoint of plaintiffs' counsel *as of the time they commenced the suit*, not retroactively, with the benefit of hindsight") (emphasis added) (citing *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976)).  Indeed, at the time the instant claims were filed, there was a growing trend by courts to reject claims similar to those asserted by Plaintiffs here.  *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp.2d 973 (C.D. Cal. 2013) (decided October 25, 2013); *see also Chin v. Gen. Mills, Inc.*, No. 12-2150 2013 WL 2420455 (D. Minn. June 3, 2013); *Brazil v. Dole Packaged Foods, LLC,* 2014 WL 6901867 (N.D. Cal. Dec, 8, 2014).  Given the foregoing, the risk associated with Plaintiffs' claims was great when the three actions were filed.

### C. Class Counsel Achieved an Excellent Result for the Plaintiff Class

The eighth—and most significant—*Johnson* factor looks to the amount involved in the litigation, with particular emphasis placed on the "monetary results achieved" in this case by Class Counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the creation of an initial $3,000,000 Settlement Fund used to make monetary payments weighs strongly in favor of approving the requested fee.  Class Counsel also negotiated

a contingent increase in this fund of up to an additional $832,500 if necessary to guarantee up to $2,750,000 million remains available to pay claims by Settlement Class Members.

Here, the creation of a common fund initially funded with $3 million with contingencies for up to $3,832,500 and including a guaranteed pool of $2,750,000 to satisfy claims made without proof of purchase up to $10.00, and with a proof of purchase up to $20.00, is substantial in the context of this case. Additionally, any Residual Amount, as that term is defined in the Settlement Agreement, will be donated in the form of Defendant's food products to charity, namely, Feeding America.

> **D.     The Requested Fee Is Consistent with Those Awarded in Other Similarly Complex Class Settlements in This Circuit.**

The fifth and twelfth *Johnson* factors—the customary fee and awards in similar cases, respectively—also support that the agreed-upon fee request, which amounts to 25% of the initial $3 million Settlement Fund, is reasonable. Indeed, a fee request of 25% is squarely in the range of the 20% to 30% "benchmark" recognized as reasonable in this Circuit. *Nelson*, 484 Fed. App'x. at 435 (noting "that 25% is generally recognized as a reasonable fee award in common fund cases") (quoting *Faught*, 668 F.3d at 1243); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1365 (finding that 30% fee is customary in class action cases); *Wolff v. Cash 4 Titles*, No. 03-22778, 2012 WL 5290155, *6 (S.D. Fla. Sept. 26, 2012) (finding that 33% is the market rate in class actions); *Pinto*, 513 F. Supp.2d at 1341 ("The 30% fee requested in this case is well in line with the bulk of the fee awards in class action litigation"); *Allapattah*, 454 F. Supp.2d at 1204 (S.D. Fla. 2006) (awarding 31.3% of the fund). In addition, final approval has been recently given to other "all natural" settlements as follows: Pop Chips ($3.15 million common fund with $991,000 fee and expense award), *see* Exhibit 5; Trader Joes ($3.375 million common

14

fund with $950,000 fee and expense award), *see* Exhibit 6; Kashi ($5 million common fund with $1.25 million fee and expense award), *see* Exhibit 7.

Accordingly, factors five and twelve favor Class Counsel's request for 25% of the common fund. Importantly, if Defendant is required to make additional contributions to the fund, under the terms of the Settlement Agreement, the percentage fee requested could be as low as 20.222% of the resulting $3,832,500 common fund.

### E. A High Level of Skill Was Necessary to Perform the Legal Services Properly

The remaining *Johnson* factors—the skill required to perform the legal services properly and the experience, reputation, and ability of the attorneys—confirm that the requested fee is reasonable. As discussed above, Class Counsel were able to successfully resolve the case through a settlement that confers substantial monetary and injunctive relief to the Settlement Class, despite the fact that Defendant was well-financed and retained top-tier counsel from a national firm. *See In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced").

The exceptional outcome achieved in this case was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity. Indeed, Class Counsel regularly engages in major complex litigation involving allegedly deceptively labeled food products and other consumer product class litigation and have been appointed class counsel by courts throughout the country. *See* Firm Resumes/Declaration of Class Counsel attached hereto as Composite Exhibit 8.

# IV.    THE AGREED-UPON INCENTIVE AWARD TO PLAINTIFFS SHOULD BE APPROVED

Finally, the Court must consider whether to approve the requested $2,500 incentive awards ($7,500 in total) to each of the three named Plaintiffs, Klacko, Surzyn, and Hall, in recognition of their roles as Class Representatives.  Courts consistently find it appropriate to provide a named plaintiff with an incentive award for the benefits conferred upon the rest of the class.  *See Allapattah*, 454 F. Supp.2d at 1218-19; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) (awarding incentive awards of $20,000 to each of two plaintiffs).  Further, courts within the Eleventh Circuit frequently approve incentive awards of $5,000 or more.  *See In re Checking Account Overdraft Litig.*, 830 F. Supp.2d at 1358 (collecting cases and approving incentive awards of $5,000 per class representative) *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 628362, *6 (S.D. Fla. Apr. 15, 2010) (approving an incentive award of $5,000 for a class representative, in addition to a new motorcycle); *Pinto*, 513 F. Supp.2d at 1344 (approving incentive award of $7,500 per class representative).  Incentive awards are intended to "compensate named Plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."  *Allapatah*, 454 F. Supp.2d at 1218-19 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

Here, the agreed-upon incentive awards of $2,500 is well-below the amounts traditionally awarded in similar actions, and, moreover, is entirely reasonable given the Plaintiffs' involvement in the litigation—involvement that was essential to the ultimate success of the

Settlement reached. Indeed, the Class Representatives dedicated their time and effort to pursuing the claims on behalf of the putative class and demonstrated a willingness to participate in the case and undertake the responsibilities and attendant risks of bringing a representative action. From start to finish, each Class Representative aided in the investigation of the claims, consulting with Class Counsel, participating in informal discovery, and contributing to the mediation efforts. Accordingly, Class Counsel requests that the Court approve the requested incentive awards of $2,500 each for Plaintiffs Klacko, Surzyn, and Hall.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court find that the requested attorneys' fees, expenses, and incentive awards are reasonable, enter the Proposed Order that will be separately submitted with the Final Approval briefing granting the requested attorneys' fees and incentive award, and award such further relief as the Court deems just and proper.

## LOCAL RULE 7.1 (A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(A)(3), on February 19, 2015, counsel for Plaintiff has conferred with counsel for Defendant, who agrees with the relief requested in this Motion.

**Respectfully Submitted,**

Dated: February 20, 2015
     */s/ Howard W. Rubinstein*
     Howard W. Rubinstein (Fla. Bar No.: 104108)
     **THE LAW OFFICES OF**
     **HOWARD W. RUBINSTEIN, P.A.**
     3507 Kyoto Gardens Drive, Suite 200
     Palm Beach Gardens, FL 33401
     (800) 436-6437
     (415) 692-6607 (fax)
     Email: *howardr@pdq.net*

Benjamin M. Lopatin (Cal. Bar No. 281730)
(Admitted *Pro Hac Vice*)
**THE LAW OFFICES OF**
**HOWARD W. RUBINSTEIN, P.A.**
One Embarcadero Center, Suite 500
San Francisco, CA 94111
(800) 436-6437
(415) 692-6607 (fax)
Email: *lopatin@hwrlawoffice.com*

L. DeWayne Layfield
**Law Office of L. DeWayne Layfield PLLC**
P.O. Box 3829
Beaumont, TX 77704
409-832-1891
Email: dewayne@layfieldlaw.com
(Admitted *Pro Hac Vice*)

Anthony J. Orshansky
Justin Kachadoorian
**CounselOne, PC**
9301 Wilshire Blvd., Suite 650
Beverly Hills, CA 90210
(310) 277-9945
(424) 277-3727 (fax)
Email:  anthony@counselonegroup.com
justin@counselonegroup.com
(*Pro hac vice* application pending)

*Attorneys for Plaintiff Deena Klacko*
*and the Proposed Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing generated by CM/ECF.

*/s/ Howard W. Rubinstein*
Howard W. Rubinstein

## SERVICE LIST
*Klacko v Diamond Foods, Inc.*
CASE NO. 14-cv-80005-BB
United States District Court, Southern District of Florida

Amanda L. Groves
Winston & Strawn LLP
100 North Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: agroves@winston.com
(Admitted *Pro Hac Vice*)

Dora Faye Kaufman
Liebler, Gonzalez & Portuondo, P.A.
44 West Flagler Street
25th Floor
Miami, FL 33130
305-379-0400
Fax: 305-379-9626
Email: dfk@lgplaw.com

James Randolph Liebler
Liebler Gonzalez & Portuondo PA
44 W Flagler Street
25th Floor
Miami, FL 33130-4329

19

305-379-0400
Fax: 379-9626
Email: jrl@lgplaw.com

Joanna C. Wade
Winston & Strawn LLP
100 N Tryon Street
Charlotte, NC 28202-1078
704-350-7700
Fax: 704-350-7800
Email: jwade@winston.com
(Admitted *Pro Hac Vice*)