## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| | x | |
| MARCIAL TORREYES, | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Case No.: 19-cv-81325 (RKA) |
| | : | |
| GODIVA CHOCOLATIER, INC., | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| *Defendant.* | : | |
| | : | |
| | x | |

## DEFENDANT GODIVA CHOCOLATIER, INC.'S
## MOTION TO DISMISS, TRANSFER, OR STAY

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

I.      Procedural History ................................................................................................. 3

       A.     Florida State Court Proceedings ................................................................ 3

       B.     Removal from State Court ......................................................................... 4

       C.     First-Filed, Putative Class Action in the Southern District of New York ............ 4

       D.     Substantially Similar Action in Washington D.C. ..................................... 5

II.     Godiva's Heritage and History ............................................................................. 6

III.    Allegations of the Operative Complaint ............................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      No Reasonable Consumer Could be Deceived by the Heritage Representation ............... 7

II.     Plaintiff Lacks Standing to Seek Injunctive Relief ............................................ 10

III.    In the Alternative, This Case Should Be Transferred to the Southern District of New York ............................................................................................................. 12

       A.     Transfer May Occur Prior to Determination of Subject Matter Jurisdiction ....... 12

       B.     Transfer Under the First-to-File Rule is Dispositive ............................... 12

       C.     Transfer under 28 U.S.C. 1404(a) is Warranted .................................... 13

            1.     Private Factors ............................................................................ 14

            2.     Public Factors ............................................................................. 15

IV.    In the Alternative, This Case Should Be Stayed ................................................. 17

REQUEST FOR ORAL ARGUMENT .............................................................................. 17

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Alhassid v. Bank of Am., N.A.,
  2014 WL 2581355 (S.D. Fla. June 9, 2014) ........................................................12

In re Application of Alves Braga,
  789 F. Supp. 2d 1294 (S.D. Fla. 2011) ...............................................................17

ASS Armor, LLC v. Under Armour, Inc.,
  2015 WL 2155724 (S.D. Fla. May 7, 2015) .........................................................13

Atl. Martine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas,
  571 U.S. 49 (2013) .............................................................................................16

Broomfield v. Craft Brew Alliance, Inc.,
  2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) .........................................................9

Buxbaum v. Godiva Chocolatier, Inc.,
  No. 19cv0558 (N.D. Cal.) ....................................................................................4

Collier v. Starbucks Coffee Co.,
  2006 WL 8440260 (M.D. Fla. Aug. 15, 2006) ....................................................13

Dapeer v. Neutrogena Corp.,
  95 F. Supp. 3d 1366 (S.D. Fla. 2015) .................................................................11

Davis v. Powertel, Inc.,
  776 So. 2d 971 (Fla. 1st DCA 2000) ..................................................................11

Dumas v. Diageo PLC,
  2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) ..........................................................8

Fahey v. Godiva Chocolatier, Inc.,
  No. 19cv2128 (D.D.C.) .......................................................................................5

Florida v. Jackson,
  2011 WL 679556 (N.D. Fla. Feb. 15, 2011) .......................................................14

Forschner Grp., Inc. v. Arrow Trading Co. Inc.,
  30 F.3d 348 (2d Cir. 1994) ...............................................................................8, 9

Gov't of Virgin Islands v. Neadle,
  861 F. Supp. 1054 (M.D. Fla. 1994) ..................................................................17

Grail Semiconductor, Inc. v. Stern,
  2013 WL 2243961 (S.D. Fla. May 21, 2013) ..........................................................................14

Gubarev v. Buzzfeed, Inc.,
  253 F. Supp. 3d 1149 (S.D. Fla. 2017) ..................................................................................16

Hasemann v. Gerber Prods. Co.,
  331 F.R.D. 239 (E.D.N.Y. 2019) ...........................................................................................16

Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.,
  669 F. Supp. 2d 1353 (S.D. Fla. 2009) ..................................................................................14

Hesse v. Godiva Chocolatier, Inc.,
  No. 19cv0972 (S.D.N.Y.) .................................................................................................1, 4

Hi-Tech Pharm., Inc. v. HBS Int'l Corp.,
  910 F.3d 1186 (11th Cir. 2018) ...............................................................................................9

Laffal v. Overseas Adventure Travel Partners, Inc.,
  2000 WL 362017 (M.D. Fla. Mar. 31, 2000) .........................................................................15

Landis v. N. Am. Water Works & Elec. Co.,
  299 U.S. 248 (1936)................................................................................................................17

Laskaris v. Fifth Third Bank,
  962 F. Supp. 2d 1297 (S.D. Fla. 2013) ..................................................................................13

Maeda v. Kennedy Endeavors, Inc.,
  2019 WL 4544272 (D. Haw. Sept. 19, 2019) ...............................................................8, 9, 10

Manuel v. Convergys Corp.,
  430 F.3d 1132 (11th Cir. 2005) .......................................................................................13, 14

Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co.,
  486 F. Supp. 2d 1366 (N.D. Ga. 2007) ..................................................................................12

Marty v. Anheuser-Busch Cos., LLC,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) ........................................................................9, 11, 12

Meterlogic, Inc. v. Copier Solutions, Inc.,
  185 F. Supp. 2d 1292 (S.D. Fla. Jan. 15, 2002)....................................................................16

Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of
  Legal Affairs, State of Fla.,
  761 So. 2d 1256 (Fla. 3d DCA 2000) ......................................................................................7

Motorola Mobility, Inc. v. Microsoft Corp.,
  804 F. Supp. 2d 1271 (S.D. Fla. 2011) ..................................................................................17

Nat'l Parks Conservation Ass'n v. Norton,
  324 F.3d 1229 (11th Cir. 2003) ........................................11

Navelski v. Int'l Paper Co.,
  244 F. Supp. 3d 1275 (N.D. Fla. 2017)...............................5

Parent v. Millercoors LLC,
  2016 WL 3348818 (S.D. Cal. June 16, 2016)........................8

Patriot Underwriters, Inc. v. Select Peo, Inc.,
  2013 WL 12154551 (S.D. Fla. 2013) .................................17

Peacock v. 21st Amendment Brewery Cafe,
  2018 WL 452153 (N.D. Cal. Jan. 17, 2018)........................9

Pernod Ricard USA LLC v. Bacardi USA,
  702 F. Supp. 2d 238 (D. Del. 2010)...................................8

Piazza's Seafood World, LLC v. Odom,
  448 F.3d 744 (5th Cir. 2006) .............................................8

Pointpay Int'l, Inc. v. Ingenico,
  2009 WL 10668597 (S.D. Fla. Mar. 17, 2009).....................12

Seidman v. Snack Factory, LLC,
  2015 WL 1411878 (S.D. Fla. Mar. 26, 2015).......................11

Shalikar v. Asahi Beer U.S.A., Inc.,
  2017 WL 9362139 (C.D. Cal. Oct. 16, 2017)........................9

Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,
  549 U.S. 422 (2007)........................................................12

Soliman v. Daimler AG,
  2010 WL 11506980 (M.D. Fla. Jan 22, 2010).......................15

Steifel Lab., Inc. v. Galderma Lab., Inc.,
  588 F. Supp. 2d 1336 (S.D. Fla. 2008) ...............................14

Torreyes v. Godiva Chocolatier, Inc.,
  No. 50-2019-CC-003115-XXXX-MB ...................................4

Trafalgar Cap. Spec. Inv. Fund v. Hartman,
  878 F. Supp. 2d 1274 (S.D. Fla. 2012) ...............................13

Univ. Exp., Inc. v. SEC,
  177 F. App'x 52 (11th Cir. 2006) ......................................5

<u>Wasser v. All Market, Inc.</u>,
    329 F.R.D. 464 (S.D. Fla. 2018) ............................................................................................11

<u>Women's Choice Pharms., LLC v. Rook Pharms., Inc.</u>,
    2016 WL 6600438 (S.D. Fla. Nov. 8, 2016).f ..................................................................13

<u>Yao v. Ulta Beauty Inc.</u>,
    2018 WL 4208324 (S.D. Fla. Aug. 8, 2018) ......................................................................13

<u>Zampa v. JUUL Labs, Inc.</u>,
    2019 WL 1777730 (S.D. Fla. Apr. 23, 2019) ....................................................................12

**Statutes**

28 U.S.C. 1404(a) ......................................................................................................................13

28 U.S.C. § 1391(a) ...................................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 12(b) ...........................................................................................1

Local Rule 7.1(a)(3) ...................................................................................................................18

Local Rule 7.1(b)(2) ...................................................................................................................17

Defendant Godiva Chocolatier, Inc. ("Godiva" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss, with prejudice, Plaintiff Marcial Torreyes' Complaint (the "Complaint" or "Compl.") under Federal Rule of Civil Procedure 12(b); in the alternative, its motion to transfer this action to the Southern District of New York pursuant to the "first-to-file" principle or 28 U.S.C. § 1404(a); and further in the alternative, its motion to stay this action pursuant to this Court's inherent authority.

## PRELIMINARY STATEMENT

This is a copy-cat action that was filed on the heels of a putative nationwide class action commenced in the Southern District of New York (the "New York Action").[1]  Like the plaintiffs in New York, Plaintiff claims that the label on Godiva's product is misleading because it supposedly creates the impression that its chocolates are made only in Belgium.  She specifically challenges the following statement:  "In 1926, the only place you could find Godiva was in Brussels.  Today, you are far more fortunate.  Introducing our individually wrapped Godiva Belgian masterpieces" (the "Heritage Representation").  But the Heritage Representation is nothing more than a historically accurate statement that simply pays homage to Godiva's Belgian history and heritage.

Despite Plaintiff's attempts to distort the plain meaning of the Heritage Representation, no reasonable consumer is likely to believe that a single reference to the historical place of Godiva's founding means that its products are still only made there (or that Godiva continues to sell chocolates that were made nearly a hundred years ago in 1926).  Indeed, one Florida court has already rejected that very claim as baseless, quickly tossing this Plaintiff's lawsuit in August 2019.  Because that action was dismissed without prejudice, Plaintiff now seeks a second bite at the apple, but in doing so, recites virtually the same meritless allegations and theory of liability.  Plaintiff's second bite is as flawed as her first.  Courts nationwide have, as a matter of law, rejected "place of origin" claims where a company's label makes mere reference – in this case, a single one to Belgium – to the place from which it originated.

The complaint in this action is predicated on a tenuous interpretation of Godiva's label, ignoring a panoply of other features – i.e., the recipes, techniques, and couverture – that render

---

[1]      The action, styled Hesse v. Godiva Chocolatier, Inc., No. 19cv0972 (S.D.N.Y.), is pending before the Honorable Alison J. Nathan.

Godiva's chocolates a veritable Belgian masterpiece.  Against a well-established, contrary body of law, Plaintiff attempts to manufacture a place of origin claim based <u>solely</u> on a single geographic reference.  Absent the type of marketing gimmicks that could conceivably amplify Plaintiff's "place of origin" theory – Belgium-centric images, turns of phrase, or fonts – the disputed label is nothing more than an accurate, categorical statement about the type of product Godiva has sold for nearly a hundred years:  Belgian chocolate.  It is no different than other consumer products that have traditionally been associated with their place of origin but are no longer only made there – Greek yogurt, Swiss Miss hot chocolate, or English muffins to name a few.  Rather, such products now stand as testaments to the places they were originally made famous.  Similarly, Godiva's chocolates are high-quality, premium products – redolent of Godiva's Belgian roots and tradition – that are distinctively Belgian whether they are made in Belgium or not.  In fact, the only reasonable interpretation of the Heritage Representation is that it recognizes just how much Godiva has grown over nearly a hundred years – from its humble origins in the Grand Place of Brussels to the globally-recognized premium chocolatier it is today.

Equally fatal to Plaintiff's claim is her reliance on a 25-year old <u>Washington Post</u> article which explicitly reported that Godiva operated manufacturing facilities in Brussels, Belgium <u>and</u> Reading, Pennsylvania:  "Give the globe a spin, land in Reading, Pa., and you'll find chocolates being created in Godiva's U.S. plant in much the same way" as its Belgian counterpart.[2] Curiously, while Plaintiff cites to this article to highlight the divergent taste profiles between Belgian and American-made chocolates, she ignores that this fact – along with the "existence of the Pennsylvania manufacturing facility"[3] – completely belies her theory that Godiva ever tried to deceive its consumers.  In other words, no reasonable consumer could have been deceived by the purported omission – that Godiva makes chocolates in America – because it has been publicly and openly accessible for nearly 25 years.  Likewise, Godiva's website for years has publicly recognized its "U.S. plant in Reading, PA, [which] now produces the same amount of chocolate for the U.S. market as the Belgian plant produces for the world."[4]

---

[2]     Ex. A, Sarah Hope Franks, "Godiva: Better in Belgium?", THE WASHINGTON POST, Sept. 14, 1994, available at: https://www.washingtonpost.com/archive/lifestyle/food/1994/09/14/godiva-better-in-belgium/7e011581-5fbb-43bf-bc7e-6db959bf5178/, last accessed October 4, 2019.
[3]     <u>Id.</u>
[4]     Ex. B, "History of Godiva," available at:
https://www.godiva.com/careersgodivahistory/careersGodivaHistory.html, last accessed October 4, 2019.

But this Court need not wade into the merits of the case.  Instead, it may – pursuant to Supreme Court precedent – transfer this case to the Southern District of New York, the forum in which similar claims were first filed in the New York Action.  Commenced in January 2019, the New York Action represents a putative nationwide class action that would cover Florida claimants, including Plaintiff here.  The New York Action and this action are substantially similar in all material respects – they share similar facts, defendants, theories of liability, and demands for relief.  Since June 2019, the parties in the New York Action have been awaiting a decision on Godiva's fully-briefed motion to dismiss.  Because transfer invokes a non-merits, threshold issue, this Court may send this case to the New York Action without having to rule on whether subject matter jurisdiction exists in this action, including Plaintiff's pending motion to remand (ECF No. 6).

In fact, under the "first-to-file" doctrine, there is a <u>strong presumption</u> that favors consolidating similar actions in the forum of the first-filed suit.  Merging this case with the New York Action through a transfer presents the most sensible, efficient path, particularly where the court in the New York Action is already familiar with the legal and factual questions at issue here and would obviate the risk of inconsistent rulings in either forum.  A transfer would also avoid duplicative litigation, achieve efficiencies, and further the interests of justice since virtually everything about this and the New York Action – but for the plaintiffs – substantially overlap.

Finally, absent an outright dismissal or a transfer to New York, this Court, pursuant to its inherent authority, may enter a discretionary and limited stay until the court in the New York Action has resolved the threshold merits questions squarely at issue in Godiva's pending motion to dismiss.  For the reasons set forth herein, Godiva respectfully requests a dismissal of this action with prejudice; alternatively, a transfer pursuant to the "first to file" rule or 28 U.S.C. § 1404(a); or alternatively, a stay pending a decision on Godiva's motion to dismiss in the New York Action.

## FACTUAL BACKGROUND

I.     **Procedural History**

    A.     **Florida State Court Proceedings**

On March 7, 2019, Plaintiff filed her complaint (the "First Complaint") in the Circuit Court, Fifteenth Judicial Circuit, in and for Palm Beach County, Florida (the "State Court"),

alleging a single count under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") predicated on the claim that the Heritage Representation supposedly misled her into believing Godiva's chocolates were made in Belgium, when in fact, they were made in Pennsylvania.[5] In June 2019, Godiva moved to dismiss the First Complaint. In August 2019, following oral argument, the State Court granted Godiva's motion without prejudice.

On August 27, 2019, Plaintiff filed another complaint (the "Operative Complaint") in the same State Court under FDUTPA, asserting in identical fashion that Godiva's Heritage Representation somehow misled Plaintiff into believing that the product she purchased "contain[ed] Belgium chocolate" when in fact, it was "not principally composed of Belgium chocolate . . . [and] does [not] contain chocolate or ingredients from Belgium" because the chocolates are actually made in Pennsylvania. (Compl. ¶¶ 10–13.) The Operative Complaint is identical to Plaintiff's First Complaint in all material respects.

### B.      Removal from State Court

On September 27, 2019, Godiva timely removed the Operative Complaint to this Court on the basis of diversity jurisdiction. The parties' diversity of citizenship is undisputed: Plaintiff is a Florida resident, and Godiva is a New Jersey corporation with a principal place of business in New York. (Compl. ¶¶ 2–3.) The allegations of the Operative Complaint also satisfy the requisite amount in controversy – taking Plaintiff's demand for no more than $5,000, attorney's fees, and injunctive relief – the costs arising from this action likely exceed $75,000. (ECF No. 1 ¶¶ 15–23.)

### C.      First-Filed, Putative Class Action in the Southern District of New York

This case is virtually identical to a putative class action commenced in the Southern District of New York.[6] Originally filed in January 2019, the New York Action merged two separate lawsuits – one from the Northern District of California[7] and another from the Southern District of New York – into a single consolidated putative class action seeking relief under New

---

[5]      This action, styled Torreyes v. Godiva Chocolatier, Inc., No. 50-2019-CC-003115-XXXX-MB (Palm Beach Cnty. 15th Cir.), was dismissed by the Honorable Edward A. Garrison.

[6]      The action is captioned, Hesse v. Godiva Chocolatier, Inc., No. 19cv0972 (S.D.N.Y.), and is pending before the Honorable Alison J. Nathan of the Southern District of New York.

[7]      That action was styled, Buxbaum v. Godiva Chocolatier, Inc., No. 19cv0558 (N.D. Cal.), and was voluntarily dismissed by the plaintiff following the parties' agreement to consolidate the case in the Southern District of New York.

York and California's consumer protection statutes on behalf of a nationwide class (which would cover Florida consumers), a New York subclass, and two California subclasses.

The operative complaint in the New York Action[8] appears to have served as a roadmap for the Operative Complaint here – the two pleadings both reference the well-established reputation of Belgian chocolate and cite a dated <u>Washington Post</u> article reporting on the differences between Godiva's chocolates in Belgium and America.  The thrust of both actions is that Godiva's allusions to its Belgian history and heritage supposedly created a misleading place of origin claim.

In June 2019, the parties completed their briefing on Godiva's motion to dismiss the New York Action.  With the motion fully briefed, the parties await the New York court's decision. All discovery in the New York Action has been stayed pending the resolution of the motion to dismiss.

> **D.      Substantially Similar Action in Washington D.C.**

Not to be outdone by the plaintiffs in New York and here, another plaintiff in Washington, D.C. commenced an action (the "D.C. Action") in May 2019, asserting substantially similar allegations and claims under the D.C. analogue to FDUTPA in the Superior Court of the District of Columbia ("D.C. Superior Court").  In July 2019, Godiva removed the D.C. Action to federal court, and shortly thereafter, moved to dismiss the case outright, transfer the case to New York, or stay the case pending a decision on Godiva's motion to dismiss in the New York Action (together, the "Transfer Motion").[9]  Among other things, the Transfer Motion analyzed the private and public interest factors under 28 U.S.C. § 1404(a), and urged transfer of the D.C. Action to the New York Action on grounds that New York, as the first-filed forum, had the greatest familiarity over the factual and legal questions overlapping each case.

The D.C. court stayed the Transfer Motion pending its decision on plaintiff's motion to remand.  On October 1, 2019, following a period of jurisdictional discovery, Godiva filed its opposition to that remand motion, asking the D.C. court to either transfer the case to New York

---

[8]      In evaluating a motion to dismiss, this Court may consider publicly available records.  <u>Univ. Exp., Inc. v. SEC</u>, 177 F. App'x 52, 53 (11th Cir. 2006) (finding that district could have considered a complaint filed in the Southern District of New York on a motion to dismiss because "[p]ublic records are among the permissible facts that a district court may consider.").  Such records – where the fact of their existence is undisputed – may be judicially noticed "at any stage of a proceeding whether or not the notice is requested by the parties."  <u>Navelski v. Int'l Paper Co.</u>, 244 F. Supp. 3d 1275, 1300 n.25 (N.D. Fla. 2017).

[9]      The D.C. Action is styled, <u>Fahey v. Godiva Chocolatier, Inc.</u>, No. 19cv2128 (D.D.C.), and is pending before the Honorable John D. Bates.

prior to reaching any decision on the remand issue or to find that subject matter jurisdiction was proper.  The court's decision on remand is currently pending.

## II.     Godiva's Heritage and History

Godiva is a manufacturer of premium quality chocolates, with roots that can be traced back nearly a century to a small praline-making storefront located in the Grand Place of Brussels, Belgium.  It is there that in 1926, Pierre Draps, Sr. made pralines from his eponymous confectionary workshop alongside his sons, Joseph, Francois, and Pierre, Jr.  Over time, the Draps renamed their family business as Godiva and built it into a renowned purveyor of premium chocolate.  In 1966, after forging a relationship with the Campbell Soup Company, Godiva entered the United States for the first time.

By 1968, Godiva began producing its chocolates in the United States.  As its website makes clear, Godiva established a manufacturing plant in Reading, Pennsylvania as part of its expansion into the U.S. market.  (See Ex. B.)  The Reading plant produces approximately the same amount of chocolate for the U.S. and Canadian markets as the Belgian plant produces for other parts of the world.  Godiva's world headquarters are now based in Manhattan.  Despite its global footprint, Godiva never lost sight of its Belgian heritage, which continues to inspire its products today.  Its website devotes a page highlighting the company's "Unparalleled Belgium Heritage Since 1926," and explains that the "Belgium 1926 logo" embodies "this spirit, paying homage to the time and place where our story first began."[10]

## III.    Allegations of the Operative Complaint

Plaintiff is a resident of Palm Beach County, Florida who allegedly purchased Godiva's Dark Chocolate Truffles (the "Product") at a third-party home goods store.  (Compl. ¶ 5.)  The Operative Complaint principally takes issue with the back label of the Product, which bears the Heritage Representation:  "In 1926, the only place you could find Godiva was in Brussels. Today, you are far more fortunate.  Introducing our individually wrapped Godiva Belgian masterpieces."  (Id. ¶ 7.)

Plaintiff alleges that the Heritage Representation could "cause consumers to expect that if the consumer is purchasing the Product [,] that he or she is purchasing a 'Belgian masterpiece;' specifically, a Godiva chocolate that has been made in Belgium since 1926, but now can be

---

[10]     Ex. C, "Unparalleled Belgium Heritage Since 1926," available at: https://www.godiva.com/chocolate-belgium-heritage-1, last accessed October 4, 2019.

purchased not only in Belgium, but in America." (Id. ¶ 8.)  Because of that, Plaintiff asserts that she believed the Product contained a "significant amount of chocolate from Belgium or, at least Belgian chocolate such that the Product included a statement of origin, displayed on the back packaging." (Id. ¶ 15.)  To demonstrate the apparent differences between American made and Belgium made chocolate, Plaintiff cites a dated Washington Post article[11] "confirm[ing] th[ose] facts." (Id. ¶ 15.)  Plaintiff's basis for damages is that she "sustained actual damages in the amount of the difference between the Product and similar products not containing Belgian chocolate" but elsewhere contends that she "sustained actual damages in the amount of the full purchase price of the Product." (Id. ¶¶ 16–17.)  In addition to damages "of no more than $5,000.00," she seeks "injunctive and declaratory relief" and "attorneys' fees and costs" that are likely to exceed $75,000. (Id. ¶ 1.)

## ARGUMENT

### I.   No Reasonable Consumer Could be Deceived by the Heritage Representation

The crux of Plaintiff's FDUTPA claim is that the Heritage Representation is somehow deceptive because it allegedly creates the impression that Godiva's chocolates are made in Belgium when, in fact, the chocolates were made in Pennsylvania.  But Plaintiff got exactly what she paid for – veritably Belgian, premium chocolates from a company whose origins can be traced to Brussels, Belgium.

The Operative Complaint falls woefully short of satisfying the proper standard under which any FDUTPA claim must be assessed:  whether a label is "likely to mislead a reasonable consumer acting reasonably in the circumstances."  Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla., 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (emphasis added).  The operative word – "likely" – requires "probable, not possible, deception ('likely to mislead,' not 'tendency and capacity to mislead')."  Id (internal citations and quotation marks omitted).

Here, no reasonable consumer is likely to construe the label at issue to mean the chocolates were made in Belgium.  The Heritage Representation contains no Belgium-oriented

---

[11]   Plaintiff alleges that she has attached and incorporates by reference the article (Compl. ¶ 15), but no such document was affixed as an exhibit to the Operative Complaint.  The 25-year old article she references, however, appears to be a September 14, 1994 Washington Post article titled, "Godiva: Better in Belgium?" which reports on the various flavor profiles of Godiva's chocolates and explicitly references the "existence of the Pennsylvania manufacturing facility."  (Ex. A.)

images, typography, or turns of phrase that suggest the chocolates were made in Belgium.
"Absent those types of elements," Godiva's packaging – which only contains the word "Belgian"
– "would not likely deceive a significant portion of the general public into believing that the
[Product is] manufactured" in Belgium.  Maeda v. Kennedy Endeavors, Inc., 2019 WL 4544272,
at *12 (D. Haw. Sept. 19, 2019) (finding the word "Hawaiian" and Hawaii-related imagery not
deceiving as a matter of law under California protection statutes).  Rather, reasonable consumers
would understand that Godiva is historically a Belgian company steeped in Belgian tradition that
makes high-quality chocolate even if it does not always do so in Belgium.  Indeed, nowhere on
the label "is it stated that [Belgium] . . . is the only place in which [Godiva chocolate] is
produced."  Parent v. Millercoors LLC, 2016 WL 3348818, at *6 (S.D. Cal. June 16, 2016)
(representations about Blue Moon beer's original production from the "Sandlot" brewery does
not mean Blue Moon "is currently produced only out of the SandLot brewery").

A host of other courts across the country have also found that mere geographic references
and modifiers describing a company and its products are not misleading as a matter of law.  See
Dumas v. Diageo PLC, 2016 WL 1367511, at *3 (S.D. Cal. Apr. 6, 2016) ("The mere fact that
the word 'Jamaica' and 'Jamaican' appear on the packaging is not sufficient to support a
conclusion that consumers would be confused regarding the origin and ingredients of the
beer.");[12] Pernod Ricard USA LLC v. Bacardi USA, 702 F. Supp. 2d 238, 244 (D. Del. 2010)
(designation "Havana Club" and bottle design referencing a "family recipe . . . [d]eveloped in
Cuba circa 1930" for rum made in Puerto Rico are not actionable statements of geographic origin
because they appeal to the "[i]magery of circa 1950s Cuban nightlife" and "Cuban heritage");
Forschner Grp., Inc. v. Arrow Trading Co. Inc., 30 F.3d 348, 355 (2d Cir. 1994) (use of term
"Swiss Army Knife" to describe a multifunction pocket knife made in China is not false and
misleading because "[t]he fact that a composite phrase contains a geographic term does not
necessarily mean that the phrase, viewed as a whole, is a geographic designation"); Piazza's
Seafood World, LLC v. Odom, 448 F.3d 744, 753 (5th Cir. 2006) ("Cajun Boy" and "Cajun

---

[12]      While this Court also dismissed this case on the basis that an express disclaimer sufficiently mitigated the
purportedly deceptive nature of the label, it expressly recognized that the plaintiff could not manufacture a viable
claim from a single reference to Jamaica.

Delight" catfish product imported from China are not confusing or misleading as to geographic origin).[13]

The more appropriate inquiry "is whether the phrase can be construed to mean that the produce is made in a certain locale." Forschner, 30 F.3d at 355. That simply is not the case here. As noted, Godiva's label accurately describes the Company's undisputed Belgian heritage and is bereft of anything indicating (or even suggesting) that its products are actually made in Belgium. The Heritage Representation "fall[s] into the exceptional category of cases susceptible to dismissal because a reasonable consumer would not be misled into believing that" Godiva's chocolates "originate from [Belgium] due to the mere inclusion of the word [Belgian] . . . ." Maeda, 2019 WL 4544272, at *13.

In fact, the Maeda court distinguished its case from several other markedly different cases predicated on a series of evocative images, fonts, or phrases so closely associated with a certain geographic location that they were found to raise, at a minimum, a question of fact that could not be resolved on a motion to dismiss. See Shalikar v. Asahi Beer U.S.A., Inc., 2017 WL 9362139, at *3, *8 (C.D. Cal. Oct. 16, 2017) (denying motion to dismiss because the "words, pictures, [and] diagrams adorning the packaging could give rise to a reasonable inference or belief that the Product was produced in Japan" and because the complaint alleged "survey evidence" indicating that the majority of respondents believed that the product was produced in Japan); Peacock v. 21st Amendment Brewery Cafe, 2018 WL 452153, at *1–2, *6 (N.D. Cal. Jan. 17, 2018) (denying motion to dismiss, in part, based on geographic symbols and references giving rise to actionable statements); Broomfield v. Craft Brew Alliance, Inc., 2017 WL 3838453, at *1–2 (N.D. Cal. Sept. 1, 2017) (denying motion to dismiss, in part, holding that "Hawaiian address, the map of Hawaii identifying defendant's brewery on the Big Island, and a statement inviting purchasers to visit the brewery when in Hawaii" were "specific and measurable representations of fact that could deceive a reasonable consumer into believing that . . . Kona beer w[as] brewed in Hawaii"); Marty v. Anheuser-Busch Cos., LLC, 43 F. Supp. 3d 1333, 1340–42 (S.D. Fla. 2014) (denying motion to dismiss because "reasonable consumer may not know what compliance with the German Purity Law means" and that multiple specific references to

---

[13]     While many of these cases analyzed whether certain statements were false and misleading to consumers under the Lanham Act, their reasoning applies with equal force under FDUTPA's "reasonable consumer" standard. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1196 (11th Cir. 2018) (analyzing Lanham Act claim under whether a "reasonable consumer would find [defendant's] label misleading").

Germany in connection with describing quality of beer could be deceiving and warranted fact-specific inquiry not suitable on motion to dismiss).  Given the Heritage Representation's single reference to Belgium, this case aligns more closely to <u>Maeda</u>, which found, as a matter of law, that a reasonable consumer could not be deceived by a label referencing Hawaii alongside Hawaii-related imagery.

Moreover, the consistently high and uniform Belgian qualities of Godiva's chocolates, including the Product, amplify the fallacy underlying Plaintiff's claim – that chocolates conforming to Belgian tradition <u>can only</u> be made <u>in</u> Belgium and then imported to consumers like her.  In its near century-old existence, Godiva has prided itself on its Belgian heritage and its adherence to the exceptionally high Belgian standards for quality chocolate products.  Because of Godiva's commitment to these standards, the Company produces its chocolates – be it in Brussels, Belgium or Reading, Pennsylvania – using Belgian techniques.  When manufacturing its products in both Belgium and the United States, Godiva uses the same couverture, the same machining techniques, and the same cocoa purchased from the same supplier.  Because "Belgian chocolate" is now recognized more for its quality among other chocolates, a reasonable consumer would understand that Godiva's chocolates are a premium product made in strict conformance to the standards, techniques, and couverture typically associated with Belgian chocolate – something far more than the place in which it was made.

Plaintiff's claim further relies on a 25-year old <u>Washington Post</u> article specifically highlighting the "existence of [Godiva's] Pennsylvania manufacturing facility" for the purpose of underscoring the varying taste profiles of chocolates made in America and in Belgium.  (Ex. A.)  That article, however, completely belies her theory of liability.  It reported, quite clearly, that "in Reading, Pa., [ ] you'll find chocolates being created in Godiva's U.S. plant in much the same way" as its Belgian factory.  (<u>Id.</u>)  Thus, for nearly 25 years, it has been publicly and openly known that Godiva manufactures its chocolates in Reading, Pennsylvania.  The very existence of this incontrovertible fact – that Godiva makes and sells chocolate from Pennsylvania – vitiates the notion that Godiva concealed it, or that Plaintiff could have been deceived by its purported omission.

## II.    Plaintiff Lacks Standing to Seek Injunctive Relief

While Plaintiff's claim for damages rests on a single purchase of the Product, she also seeks injunctive relief on the basis that she allegedly "continue[s] to be aggrieved by the

deceptive and misleading labeling and advertising of the Product."  (Compl. ¶ 19.)  This is precisely the kind of allegation that Florida courts have concluded is insufficient grounds for injunctive relief.  Without more, Plaintiff cannot plausibly (or credibly) assert that she will suffer an injury-in-fact, particularly since she now knows about the purported deception.  Nor can Plaintiff claim standing for injunctive relief where she has not alleged that she specifically intends to purchase Godiva chocolate in the future.

"Although the FDUTPA allows a plaintiff to pursue injunctive relief even where the individual plaintiff will not benefit from an injunction, it cannot supplant Constitutional standing requirements."  Dapeer v. Neutrogena Corp., 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015). Despite being "broadly worded to authorize . . . injunctive relief even if those remedies might not benefit the individual consumers who filed suit," Davis v. Powertel, Inc., 776 So. 2d 971, 975 (Fla. 1st DCA 2000), a plaintiff bringing a FDUTPA claim must nevertheless assert a "real and immediate threat of future injury in order to satisfy the 'injury in fact' requirement for Article III standing."  Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1241 (11th Cir. 2003).

In food labeling cases arising under consumer statutes similar to FDUTPA, courts have generally conferred standing only where a plaintiff claims that she "would still be interested in purchasing the product if it were labeled properly."  Marty v. Anheuser-Busch Cos., LLC, 43 F. Supp. 3d 1333, 1355 (S.D. Fla. 2014) (citing Mason v. Nature's Innovation, Inc., 2013 WL 1969957, at *4 (S.D. Cal. May 13, 2013)).  Even if a plaintiff does not make such an express allegation, she may allege "repeat past purchases, brand loyalty, [facts relating to] ongoing purchases, and an injury unconnected to the performance of the product," to show her intent to purchase the offending product in the future.  Id. (internal citation omitted).

Here, the Complaint is utterly devoid of any such allegations.  While Plaintiff maintains that she "will continue to be aggrieved by the deceptive and misleading labeling . . . of the Product," this allegation – effectively highlighting a defendant's ongoing conduct as the basis for injunctive relief – has been expressly rejected by numerous Florida courts.  The "mere fact that the defendant will continue to engage in the same conduct is not enough.  There must also be a likelihood that the complained conduct will likely harm [this] particular plaintiff[] in the future." Id. at 1357; Wasser v. All Market, Inc., 329 F.R.D. 464, 471 (S.D. Fla. 2018); Seidman v. Snack Factory, LLC, 2015 WL 1411878, at *5 (S.D. Fla. Mar. 26, 2015).  Absent "any allegations that

[plaintiff] would purchase [Godiva's chocolate] again, it is unclear how [she] can establish a likelihood of future injury."  Marty, 43 F. Supp. at 1357.

### III.    In the Alternative, This Case Should Be Transferred to the Southern District of New York

#### A.    Transfer May Occur Prior to Determination of Subject Matter Jurisdiction

The "Supreme Court has held that a court need not decide jurisdictional issues before dismissing a case for non-substantive reasons, such as forum non conveniens or improper venue."  Pointpay Int'l, Inc. v. Ingenico, 2009 WL 10668597, at *3 (S.D. Fla. Mar. 17, 2009) (citing Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 432 (2007)).  Thus, this Court may consider transferring this action to a more convenient forum even before it considers the question of subject matter jurisdiction.  Sinochem, 549 U.S. at 432.

Even if the basis for subject matter jurisdiction is challenged, either by Plaintiff or this Court sua sponte, "there is no federal law or statute, or judicial decision, that requires [a] court to decide a [remand issue] before it decides a motion to transfer."  Zampa v. JUUL Labs, Inc., 2019 WL 1777730, at *3 (S.D. Fla. Apr. 23, 2019) (citation omitted).  Indeed, "courts have generally decided motions to transfer in the first instance when there is another court that is already familiar with the issues to ensure the efficient use of judicial resources."  Id. at *4 (citing Maxon v. Sentry Life Ins. Co., 2018 WL 3850011, at *2 (M.D. Fla. Apr. 11, 2018)).  Thus, courts in this District and the Eleventh Circuit have routinely elected to transfer cases – following removal and without considering whether subject matter jurisdiction existed – in which a substantially similar action was first filed in another forum.  Id. at *4; Marietta Drapery & Window Coverings Co., Inc. v. North River Ins. Co., 486 F. Supp. 2d 1366, 1368 n.2 (N.D. Ga. 2007) ("Because a dismissal under the first filed rule is not a determination of the merits, the Court need not establish that it has subject matter jurisdiction over this action before proceeding to consider whether the first filed rule should be applied in this case.").

#### B.    Transfer Under the First-to-File Rule is Dispositive

"The first-to-file rule is a doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions."  Alhassid v. Bank of Am., N.A., 2014 WL 2581355, at *2 (S.D. Fla. June 9, 2014).  Under this rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-

filed suit."  Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005) (citations omitted and emphasis added); ASS Armor, LLC v. Under Armour, Inc., 2015 WL 2155724, at *2 (S.D. Fla. May 7, 2015) ("When the first-to-file rule is applicable, a district court may elect to stay, transfer, or dismiss a duplicative later-filed action.  District courts have the inherent power to stay litigation pending the outcome of a related proceeding in another forum.").  Indeed, this Court need not even address a request for transfer predicated on Section 1404(a) because "application of the first-to-file rule is dispositive."  Laskaris v. Fifth Third Bank, 962 F. Supp. 2d 1297, 1299 (S.D. Fla. 2013).

Three factors bear on this analysis:  (1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues.  Women's Choice Pharms., LLC v. Rook Pharms., Inc., 2016 WL 6600438, at *2 (S.D. Fla. Nov. 8, 2016).  Here, the New York Action was filed first on January 30, 2019.  On the heels of that filing (and in the immediate aftermath of national coverage of the putative class action), Plaintiff here purchased the Product on February 12, 2019 – just 12 days after the commencement of the New York Action.  Plaintiff filed the First Complaint on March 7, 2019.  Following its dismissal, the same Plaintiff filed the Operative Complaint on August 27, 2019.

The parties and issues here and in the New York Action are similar.  For purposes of this analysis, the "parties and issues in the cases need not be identical.  Rather, the crucial inquiry is whether the parties and issues substantially overlap."  Collier v. Starbucks Coffee Co., 2006 WL 8440260, at *2 (M.D. Fla. Aug. 15, 2006).  The plaintiffs in the New York Action are, like Plaintiff here, individual consumers who purchased Godiva products bearing the Heritage Representation.  If the New York Action were certified as a class, Plaintiff would qualify as a member of the national class.  Yao v. Ulta Beauty Inc., 2018 WL 4208324, at *3 (S.D. Fla. Aug. 8, 2018) ("overlap between the Illinois putative class definition and Plaintiff's claims satisfies the similarity of the parties factor").  Finally, the factual and legal issues in this case are unquestionably similar to those in the New York Action and boil down to a singular question: whether a reasonable consumer would be deceived by Godiva's allusions to Belgium.  Id.

### C.    Transfer under 28 U.S.C. 1404(a) is Warranted

Alternatively, a "motion to transfer venue is governed by 28 U.S.C. § 1404(a)." Trafalgar Cap. Spec. Inv. Fund v. Hartman, 878 F. Supp. 2d 1274, 1281 (S.D. Fla. 2012).  Under this section, a district court has the discretion to "transfer any civil action to any other district or

division where it might have been brought to further the convenience of parties and witnesses and to serve the interest of justice." Grail Semiconductor, Inc. v. Stern, 2013 WL 2243961, at *1 (S.D. Fla. May 21, 2013). A Section 1404(a) transfer entails a two-step inquiry: (1) the transferee venue must be one in which this action could originally have been brought by Plaintiff; and (2) a court must conduct a balancing test, weighing several private and public interest factors. Steifel Lab., Inc. v. Galderma Lab., Inc., 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008).

        As an initial matter, this action could have been brought in the Southern District of New York. Where the Court's jurisdiction is based solely on diversity of citizenship, venue is proper in (1) a judicial district where any defendant resides, or (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. See 28 U.S.C. § 1391(a). The statute is designed to "require courts to focus on relevant activities of the defendant, not the plaintiff." Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc., 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009). Here, Godiva resides in the Southern District of New York, where it is headquartered and purposely avails itself of conducting business. New York is also the forum in which a substantial part of the events or omissions giving rise to Plaintiff's purported claim arose – i.e., the allegedly fraudulent mislabeling of Godiva's products.

        Once venue has properly been established in the transferee forum, courts must weigh a series of case-specific private and public factors: (1) the plaintiff's initial choice of forum; (2) the locus of operative facts; (3) the general convenience to the parties of litigating in one forum or another; (4) the convenience to the witnesses; (5) the relative ease of access to documents and discovery; (6) the financial impacts on the parties of litigating in one forum versus another; (7) the familiarity with governing law by the judges in the respective forums; (8) each forum's interest in adjudicating the dispute; and (9) the relative congestion of cases in the competing forums. Convergys Corp., 430 F.3d at 1135, n.1.

### 1.    Private Factors

        While a plaintiff's choice of forum is generally an important factor, it is equally "well settled that where there are operative facts underlying the cause of action did not occur within the forum chosen by the Plaintiff, the choice of forum is entitled to less consideration." Florida v. Jackson, 2011 WL 679556, at *3 (N.D. Fla. Feb. 15, 2011). Here, the only nexus between Plaintiff and Florida is that she purchased the Product in Palm Beach. (Compl. ¶ 5.) All of the

other material, operative facts of this case lack any nexus to this forum. Godiva resides in New Jersey, where it is incorporated, or New York, where it operates its main corporate office and conducts substantial business. The alleged events or omissions underlying this action arose, in substantial part, in New York, where Godiva is headquartered. Godiva's development, branding, and implementation of the phrase at issue here – the Heritage Representation – occurred, in large part, in New York.

The other private factors either militate in favor of transfer or have no effect on the analysis. The locus of the operative facts is New York, where Godiva allegedly conceived of the Heritage Representation and expressly made the decision to apply it on all products, including the Product at issue in this action. The general convenience of the parties litigating in one forum or the other does not weigh strongly in either direction. But the convenience of the witnesses tilts in favor of New York because virtually all of the witnesses, save Plaintiff, are located in New York. Godiva maintains its headquarters in midtown Manhattan, and virtually all of the witnesses whose testimony would bear on the issues here – former or current Godiva employees – reside or work in or near New York. While many of these non-party witnesses "cannot be compelled to appear live at trial in this jurisdiction, [ ] they could be compelled to appear" pursuant to New York's subpoena power. Soliman v. Daimler AG, 2010 WL 11506980, at *6 (M.D. Fla. Jan 22, 2010).

Moreover, while most of the relevant documents are likely to be in electronic form, access to them, if anything, tends to favor New York since virtually all of the documents subject to discovery in this action are located and will be produced in the New York Action. Laffal v. Overseas Adventure Travel Partners, Inc., 2000 WL 362017, at *3 (M.D. Fla. Mar. 31, 2000) (access to proof largely located in transferee forum where court "is in a much better position to oversee what is likely to be a complicated discovery process"). In fact, Godiva is likely to bear the brunt of the costs given that much of the discovery in this action centers on Godiva's labeling practices. Finally, any financial impact to Plaintiff of litigating this matter in New York is highly minimal – substantially all of the work can be performed remotely through electronic filing with the court and any deposition of Plaintiff can be taken in Florida. Id. (finding that corporate defendant would incur substantially more costs to send witnesses to Florida and that Plaintiff's "only expense would be travel" and is "better able to bear the cost of a transfer than Defendant").

    2.    **Public Factors**

One of the most compelling public interest factor weighing in favor of transferring this action to the Southern District of New York is that the interests of justice would be served by avoiding duplicative proceedings and potentially inconsistent judgments.  Meterlogic, Inc. v. Copier Solutions, Inc., 185 F. Supp. 2d 1292, 1301–02 (S.D. Fla. Jan. 15, 2002) ("trying this case in two separate district courts would lead to wastefulness of time, energy, and money"). Since January 2019, the New York court has had the opportunity to familiarize itself with the facts and issues of the dispute in the New York Action.  Currently pending before the New York Court is Godiva's motion to dismiss, which was completely briefed by early June 2019.  This Court's potential resolution of the same issue – whether the Heritage Representation is misleading as a matter of law (which it is not) – would overlap, and possibly conflict, with the New York Court's assessment.  Additionally, even if a transfer of this case does not ultimately result in the consolidation of this action with the New York Action, at a minimum such a transfer could facilitate the coordination of pretrial discovery given the substantial likelihood that documents and testimony bearing on the issues in each case will overlap.  Given the risks of keeping the case here – and the clear benefits of transfer – the interests of justice are better served when a case is transferred to the district where related actions are pending.

Another factor – the transferee court's familiarity with the governing law – supports transfer.  While Plaintiff's claim here is predicated on the FDUTPA, that fact is not dispositive of whether the Southern District of New York is familiar with the law governing this case. "[F]ederal judges routinely apply the law of a State other than the State in which they sit."  Atl. Martine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 67 (2013).  The task of interpreting and applying the FDUTPA will not be a difficult or foreign one for the New York court, given that it shares the same standard under which liability is assessed with the New York and California laws at issue in the New York Action.  See Hasemann v. Gerber Prods. Co., 331 F.R.D. 239, 258 (E.D.N.Y. 2019) ("Both the FDUTPA and [New York law] require that a plaintiff prove that an objective, reasonable person would likely have been deceived by the misrepresentations.").

The next factor – relative congestion – favors neither forum.  "Courts require a significant difference between districts before finding that congestion merits transfer."  Gubarev v. Buzzfeed, Inc., 253 F. Supp. 3d 1149, 1168 (S.D. Fla. 2017).  Both the districts in New York and Florida boast active dockets involving high-stakes, complex litigation.  But the final factor –

local interest in deciding local controversies – weighs in favor of transfer.  While each state has an interest in addressing local controversies, this case – but for Plaintiff's single purchase – lacks any connection to Florida.  Indeed, due to Godiva's significant presence in New York, the "local interest in this case would be higher there than in this District." Motorola Mobility, Inc. v. Microsoft Corp., 804 F. Supp. 2d 1271, 1278 (S.D. Fla. 2011).  Accordingly, the balance of the private and public factors militates toward transferring the case to New York.

## IV.    In the Alternative, This Case Should Be Stayed

It is well-settled that a "district court has the authority to stay proceedings on its own motion or on motion of the parties." In re Application of Alves Braga, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011) (citing Landis v. N. Am. Water Works & Elec. Co., 299 U.S. 248, 254 (1936)).  That discretion is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254–55.  In considering a stay, courts must weigh competing interests and maintain an even balance between the court's interests in judicial economy and any possible hardship to the parties. Gov't of Virgin Islands v. Neadle, 861 F. Supp. 1054, 1055 (M.D. Fla. 1994) (staying case which duplicated one pending in another federal district court).

While Godiva respectfully submits that a dismissal of the Complaint or a discretionary transfer would be the most appropriate course of action, in the absence of such steps, a stay here – at least until the New York court resolves Godiva's fully briefed motion to dismiss – would "avoid needless duplication of litigation issues." Patriot Underwriters, Inc. v. Select Peo, Inc., 2013 WL 12154551, at *1 (S.D. Fla. 2013).  This action mirrors – in virtually identical form – the New York Action, and would require this Court to undertake the task of analyzing the same allegations and consumer protection standards that the New York court has been considering.  A concurrent, dual-track review would amount to an unnecessary expenditure of judicial time and resources.  Even worse, it could result in inconsistent dispositions, potentially leaving Godiva in a bind as to how it can adequately comply with potentially disparate orders rendered by this Court and the New York court.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Godiva respectfully requests oral argument on its motion to dismiss, transfer, or stay.  This action presents a unique procedural posture – it is the second-filed action by the same Plaintiff and shares substantially similar factual and legal

questions with the New York Action.  Moreover, in view of Plaintiff's motion to remand (ECF No. 6), this Court is presented with the question of whether it is authorized to contemplate the transfer of this action despite a challenge to its subject matter jurisdiction – a question that several courts in this Circuit have answered in the affirmative.  Oral argument would assist this Court in determining these threshold, nonmerits issues.

## CONCLUSION

For the foregoing reasons, Godiva respectfully requests that this Court dismiss the Complaint with prejudice for failure to state a claim and for lack of standing.  In the alternative, Godiva respectfully requests that this Court transfer, in the interests of justice, this action to the Southern District of New York, where an action arising from substantially all the same nucleus of operative facts and involving substantially identical issues of law is currently pending.  Should the Court decline to dismiss or transfer this action, Godiva respectfully asks for a stay until the Southern District of New York resolves Godiva's pending motion to dismiss.

Pursuant to Local Rule 7.1(a)(3), Godiva certifies that it conferred in writing with Plaintiff's counsel in a good faith effort to resolve the issues raised in this motion to dismiss, transfer, or stay, and was unable to do so.

Dated:  October 4, 2019

KASOWITZ BENSON TORRES LLP

By:   /s/ Kelly Anne Luther
Kelly Anne Luther
Florida Bar No. 870780
kluther@kasowitz.com
Giselle Gonzalez Manseur
Florida Bar No. 44026
gmanseur@kasowitz.com

Seth A. Moskowitz (*pro hac vice* admission pending)
Brian S. Choi (*pro hac vice* admission pending)
1633 Broadway
New York, New York 10019
Tel.:  (212) 506-1700
Fax:  (212) 506-1800

*Attorneys for Defendant Godiva Chocolatier, Inc.*

18

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 4, 2019, I electronically filed the foregoing document using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Kelly Anne Luther*

Kelly Anne Luther