# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 19-81325-CIV-ALTMAN

**MARCIAL TORREYES**,

    *Plaintiff*,

v.

**GODIVA CHOCOLATIER, INC.**,

    *Defendant*.

_____/

## ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand (the "Motion") [ECF No. 6], which he filed on October 3, 2019. On October 17, 2019, the Defendant filed a Response in Opposition (the "Response") [ECF No. 12]. And the matter ripened on October 23, 2019, when the Plaintiff filed his Reply (the "Reply") [ECF No. 15].

## THE FACTS

"Life," Forrest Gump famously declared, "is like a box of chocolates. You never know what you're going to get." FORREST GUMP (Paramount Pictures 1994). After learning that the "Belgian" chocolates he bought were manufactured in Reading, Pennsylvania—and not, as the label suggested, in Belgium—the Plaintiff, Marcial Torreyes, might agree.

In February of 2019, the Plaintiff purchased a bag of Godiva Chocolatier Dark Chocolate Truffles at a Marshalls & HomeGoods store in Royal Palm Beach, Florida. *See* Complaint [ECF No. 1-2] ¶ 5. On the back of the bag, the label read as follows: "In 1926, the only place you could find Godiva was in Brussels. Today, you are far more fortunate. Introducing our individually wrapped Godiva **Belgian** masterpieces." *See id.* ¶ 7. According to the Plaintiff, this representation leads consumers to one ineluctable conclusion: that Godiva chocolates have been made in Belgium

since 1926. *See id.* ¶ 8–11. Indeed, the Plaintiff says, he purchased the Godiva chocolates at issue here as a result of this representation. *See id.* ¶ 15, 19.

Apparently, however, Godiva chocolates are not made with Belgian chocolate; indeed, they contain no Belgian ingredients at all. *See id.* ¶ 12. Instead, Godiva chocolates are made in Reading, Pennsylvania. *See id.* ¶ 13. In other words, the representations on the product's label, the Plaintiff contends, are misleading. *See id.* ¶ 14, 17–18, 20, 22.

On August 26, 2019, the Plaintiff filed, in state court, this lawsuit, in which he averred that the Defendant had violated Florida's Deceptive and Unfair Trade Practices Act (the "FDUTPA"). *See generally id.* According to the Complaint, the Defendant violated FDUTPA by claiming that its chocolates are made in Belgium when, in fact, they are manufactured in Pennsylvania. *See generally id.* For that violation, the Plaintiff seeks: (i) a declaration that the product label at issue is deceptive; (ii) an injunction preventing the Defendant from selling the chocolates; and (iii) "actual damages, costs and reasonable attorney's fees." *Id.* at 7. As for actual damages, the Plaintiff asks for "the purchase price of the product." *See id.* ¶ 31. And, on the question of attorneys' fees, the Plaintiff claims he both "has and will incur reasonable costs and attorneys' fees in pursuit of this action." *See id.* ¶ 32.

The Defendant removed this case to federal court on September 27, 2019. *See generally* Notice of Removal [ECF No. 1]. According to the Defendant, the Court may exercise subject-matter jurisdiction over this case because (1) the parties are completely diverse, and (2) the amount in controversy exceeds $75,000. *See id.* ¶¶ 13–23. On October 3, 2019, the Plaintiff filed his Motion to Remand [ECF No. 6].

**THE LAW**

A federal court should remand to state court any case that has been improperly removed. *See* 8 U.S.C. § 1447(c). The party attempting to invoke the federal court's jurisdiction bears the burden of establishing that jurisdiction. *See McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). "Not only does the language of the Act of 1887 evidence the Congressional purpose to restrict the jurisdiction of the federal courts on removal, but the policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of such legislation." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941). Indeed, "[d]ue regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Healy v. Ratta*, 292 U.S. 263, 270 (1934). "Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

District courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between" the citizens of one state and the citizens or subjects of a foreign state. *See* 28 U.S.C. § 1332(a). Diversity jurisdiction requires complete diversity: every plaintiff must be diverse from every defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)). For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated

and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

The party invoking federal jurisdiction must establish that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). If left unchallenged, a removing defendant, "as specified in § 1446(a)[,] . . . need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But, once challenged, "a conclusory allegation that the amount in controversy requirement is satisfied [is] insufficient to sustain jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). "[W]here jurisdiction is based on a claim for indeterminate damages, the . . . party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003); *see also Dart Cherokee Basin*, 574 U.S. at 88.

## ANALYSIS

In the Plaintiff's telling, the Defendant cannot show that the amount in controversy exceeds $75,000. *See* Mot. The Defendant, for its part, counters that the parties are completely diverse—something the Plaintiff does not dispute[1]—and that the amount in controversy does, in fact, exceed $75,000. *See generally* Notice; *cf.* 28 U.S.C. § 1332.

FDUTPA allows plaintiffs to recover both actual damages and attorneys' fees. *See* Fla. Stat. 501.211(2). Specifically, in "any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorneys' fees and court costs as provided in [Fla. Stat. 501.2105]." *Id.* But the attorneys' fees must be "reasonable."

---

[1] Nor can he: The Defendant is a citizen of both New Jersey and New York, while the Plaintiff is a citizen of Florida. *See* Notice of Removal ¶ 14.

4

*See* Fla. Stat. § 501.2105. Although the Complaint does not list the price the Plaintiff paid for her single bag of Godiva chocolates—the "actual damages"—the Defendant helpfully stipulates that it was less than $5,000. *See* Notice of Removal ¶ 8. At first blush, then, this case involves nothing more than a straightforward state-law claim over a single bag of chocolates—worth somewhere between $0 and $5,000—purchased at a Marshall's department store in the State of Florida. *See* Compl. ¶ 5.

Not content in state court, though, the Defendant takes three stabs, as it were, at making a federal case out of it. *First*, the Defendant adds to the price of the bag of chocolates the value of the Plaintiff's requested injunctive relief. And, as the Defendant rightly notes, the injunction's value may well be incalculable. *See* Notice ¶ 17. *Second*, the Defendant adds to *that* amount the Plaintiff's attorneys' fees. String-citing a number of (far) more complicated lawsuits, the Defendant estimates that, by the time all's said and done, the Plaintiff's attorney will be seeking somewhere between $250,000 and $750,000 for his prosecution of this one-count complaint. *See id.* ¶ 20. *Third*, the Defendant argues, without *any* support, that *its own* attorneys' fees should likewise be thrust into the amount-in-controversy mix. *See id.* ¶ 22. Here, the Defendant insists that, from the date the Complaint was filed (August 27, 2019) to the time of the Notice of Removal (September 27, 2019), its "attorneys have billed more than $75,000 for work." *Id.* Each argument fails.

### I. The Value of the Injunction

While the Court must—as the Defendant insists, *see* Notice ¶ 17—estimate the injunction's value in calculating the amount in controversy, the proper computation turns, not on the profits *the Defendant* stands to lose, but on the value of the injunction *to the plaintiff*. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of

5

the litigation *from the plaintiff's perspective.*" *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (emphasis added) (citing *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.,* 120 F.3d 216, 218–20 (11th Cir. 1997)). This "plaintiff-viewpoint rule," in other words, countenances only the monetary value "that would flow to the plaintiff if the injunction were granted." *See Cohen*, 204 F.3d at 1077.

This principle is well-established. In *Mitchell v. GEICO*, 115 F.Supp.2d 1322, 1325–30 (M.D. Ala. 2000), for instance, the court applied the "plaintiff-viewpoint rule" to a case in which the plaintiffs sought an injunction preventing GEICO "from using imitation parts [and] from eliminating procedures, materials and parts necessary to restore damaged vehicles using property of like kind and quality." *Id.* at 1325. In an attempt to establish federal jurisdiction, GEICO argued—as the Defendant does here—that, if granted, the injunction would cost GEICO far more than $75,000. In rejecting GEICO's argument, the court noted that, *from the plaintiffs' perspective*, the "value of the requested injunctive relief [was] minimal and speculative." *Id.* at 1327; *cf. Leonard v. Enter. Rent a Car*, 279 F.3d 967, 973 (11th Cir. 2002) (applying, in a removed case, the "too speculative" test for injunctive relief). Specifically, the court explained, the monetary benefit of any prospective injunction "will only materialize provided that a Plaintiff continues to [patronize the Defendant's businesses]" and finds himself in a position to purchase the same products—i.e. automotive replacement parts—again. *Id.* "These contingencies, the court [found], raise only hypothetical situations that are too conjectural for purposes of ascertaining a monetary value of the injunction as a whole." *Id.*

In this case, the Plaintiff has sought an injunction that, he hopes, will prevent the "Defendant from selling, marketing, distributing, and selling the Product unless/until Defendant remedies the Product packaging." Compl. at 7. As in *GEICO*, this injunction would yield some

6

value to the Plaintiff only if he, at some future time, decides to buy another bag of Belgian-made, Godiva chocolates. And, given what he now knows—viz. that these purportedly Belgian chocolates are, in fact, made in Reading, Pennsylvania—the Plaintiff is, it almost goes without saying, unlikely ever to buy these chocolates again. In any event, even if the Plaintiff were ever to buy this product again, the "monetary value that would flow to the Plaintiff" would be either: (i) the amorphous value of buying chocolates that do not contain the made-in-Belgium (mis)representations, or (ii) the value of not seeing on store shelves bags of chocolates with those (mis)representations imprinted on them. As in *GEICO*, the value of that injunction is not readily susceptible of computation—and is thus too "minimal and speculative" to sustain this Court's jurisdiction.

## II. The Value of the Plaintiff's Attorneys' Fees

The Defendant next argues that, when a statute—like FDUTPA—provides for the recovery of attorneys' fees, this Court should attempt to extrapolate the reasonable amount of fees the Plaintiff might incur if the case were to proceed to trial. *See* Notice ¶ 20. Alternatively, the Defendant contends that, even if the Court were to consider only the quantum of fees the Plaintiff had incurred at the time of removal, the amount in controversy would still be satisfied. *See id.* ¶ 21.

The Eleventh Circuit has not resolved this question, and its sister circuits are decidedly split on the issue. *Compare Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998) ("[L]egal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed.") *with Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 796 (9th Cir. 2018) ("[W]e do not share the Seventh Circuit's concern that calculating future attorneys' fees is inherently too

7

speculative.").

In holding that prospective attorneys' fees—that is, attorneys' fees the plaintiff incurred *after* removal—should be included in the amount-in-controversy calculus, the Ninth Circuit likened prospective attorneys' fees to future damages in a lost-wages case. *See Fritsch*, 899 F.3d at 794. Much like future lost wages, the court explained, "there is no question that future attorneys' fees are at stake in the litigation." *Id.* (cleaned up). Notably, the Ninth Circuit was also bound by a prior precedent, *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018), in which it had held that the amount of the plaintiff's future attorneys' fees should count towards the $75,000 threshold. *See Fritsch*, 899 F.3d at 796.

This Court respectfully disagrees with the Ninth Circuit's analysis. When attorneys' fees are recoverable—either by contract or by statute—only fees incurred *at the time of removal* should be included in the amount-in-controversy computation. This principle follows naturally from the well-trodden rule that, in a removed case, jurisdiction must be determined "at the time of removal, not later." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). And, "at the time of removal," a plaintiff has no legal entitlement to attorneys' fees that have not yet been billed.

By contrast, that same plaintiff at all times maintains his legal entitlement to any non-speculative future *damages* he may one day incur. This is true because *all* of his allowable money damages (past and future) are, as it were, remedies for an injury he sustained on the date of his injury—a date that necessarily preceded both the filing of his claim and any subsequent removal. Put another way, if, one day after removal, a plaintiff were to move for summary judgment—and if, immediately thereafter, the court were to grant that motion—the court would still award the plaintiff his non-speculative future damages because those were damages the plaintiff sustained on the date of his injury. But the court would not, it goes without saying, award him or his lawyers

8

any future, as-yet-unbilled, attorneys' fees. And that would be true whether or not the exercise of computing those fees was, as the Seventh Circuit feared, speculative—because, speculative or not, the plaintiff would have no legal entitlement to them. It follows, then, that any future fees the Plaintiff's lawyer might have incurred had this case proceeded to trial were not, strictly speaking, in controversy "at the time of removal."

This conclusion is in line with the majority rule in this Circuit, *see Shelly v. Target Corporation*, Case No. 9:19-81231-CIV-Rosenberg, ECF No. 13 (S.D. Fla. Sept. 24, 2019) (collecting cases), and is consistent with this Court's prior decision in *Biddle v. Lowe's Home Centers LLC*, No. 9:19-81251-CIV-ALTMAN, ECF No. 28 (S.D. Fla. Oct. 31, 2019). As this Court explained in rejecting a similar argument in *Biddle*, "any approach that attempted to extrapolate, for purposes of the amount in controversy requirement, the amount of fees and costs a plaintiff might incur through the date of some hypothetical future trial would, practically speaking, eviscerate the requirement itself and result in federal courts assuming jurisdiction over a large swath of state-law claims." *Id*. at 4 (cleaned up).

Having concluded that the Defendant can only count the fees the Plaintiff incurred at the time of removal to satisfy the amount-in-controversy requirement, the Court now turns to the facts of this case. "[W]here jurisdiction is based on a claim for indeterminate damages, the . . . party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co.*, 329 F.3d at 807; *see also Dart Cherokee Basin*, 574 U.S. at 88. Notably, "when the amount in controversy substantially depends on a claim for attorneys' fees, that claim should receive heightened scrutiny." *Cohen*, 204 F.3d at 1080 n.10.

"But the Defendant has provided *no* evidence to substantiate its allegation that the

9

Plaintiff's attorney has incurred *any* fees at all. It has conducted no discovery on that question, and it has sought no extension of time within which to do so." *Gomez v. First Liberty Ins.*, No. 9:19-62750-CIV-ALTMAN [ECF No. 6] (S.D. Fla. Nov. 15, 2019). Instead, the Defendant attaches to its Notice of Removal a copy of attorneys' fees requests from other cases. *See* Notice of Removal Ex. C [ECF No. 1-3]. In those requests, the partners representing the Plaintiff sought an almost-uniform rate of $500 per hour, while the associates worked at approximately $375/hr. *See id.* at 62.

With the benefit of some "judicial experience"—and a modicum of "common sense," *see Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1063 (11th Cir. 2010)—the Court has determined that this is a straightforward, garden-variety FDUTPA case. *See Tatum v. Progressive Select Ins. Co.*, No. 5:18-CV-165-MCR-GRJ, 2018 WL 7350671, at *3 (N.D. Fla. Oct. 16, 2018) (doubting whether the costs of litigating "garden variety" cases—where, as here, the disputed monetary amounts are significantly lower than $75,000—might ever satisfy the amount in controversy requirement). The Plaintiff, after all, has brought a one-count complaint under a state statute over a bag of chocolates whose price—again, employing some common sense—is far less than $5,000. But even if the bag of chocolates did cost the Plaintiff $5,000—and even if the associates and paralegals never touched his case and left everything to the firm's partners—at $500/hour, those partners would have had to spend a staggering 140 hours researching and drafting a one-count, seven-page complaint to bring the amount in controversy to $75,000.

"Heightened scrutiny" or not, the Defendant has provided *no evidence* to suggest that the Plaintiff's lawyer has spent anywhere near this much time on this case—and the Court is disinclined to believe that he has.

## III. The Value of the Defendant's Attorneys' Fees

Finally, the Defendant asks the Court to add the Defendant's own attorneys' fees to the amount-in-controversy analysis. *See* Notice ¶ 19. But the Defendant fails to cite even a single case—not in this Circuit and not anywhere else—that has similarly included *the Defendant*'s attorneys' fees in the amount-in-controversy calculation. *See generally id.* Instead, the Defendant relies on a number of inapposite cases that stand for the unremarkable proposition that, in cases seeking injunctive relief, a court may consider, in its amount-in-controversy computation, the costs the *Plaintiff* would save if the injunction were granted. *See, e.g.*, *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1343–44 (11th Cir. 2018). Working from this general principle—that a "plaintiff's potential liability" may be considered as a part of the amount in controversy, *see id.* at 1344—the Defendant contends that, when a statute contains a fee-shifting provision, the Defendant's own fees must be included as part of the amount in controversy because, broadly speaking, they constitute a "potential liability" of the Plaintiff.

The Defendant's position—alluring as it may, at first blush, appear—suffers from several fatal defects. *First*, and most obviously, its insistence that some aspect of the amount-in-controversy inquiry be "evaluated from Godiva's perspective," Notice of Removal ¶ 22, flies in the face of the Eleventh Circuit's well-established "plaintiff-viewpoint rule." *See Cohen*, 204 F.3d at 1077 (the "plaintiff-viewpoint rule" considers only the monetary value "that would flow to the plaintiff if the injunction were granted"). And nowhere in *Fastcase* did the Eleventh Circuit abrogate—or even so much as undermine—this rule. To the contrary, *Fastcase* simply made clear that the monetary value of an injunction may include the absolution, from the plaintiff's perspective, of his otherwise-existing liabilities. *See Fastcase*, 907 F.3d at 1344. Indeed, the Eleventh Circuit's use of the word "liability" in this context to describe the value of the plaintiff's

extant obligations never countenances, as the Defendant insists, any hypothetical shifting of liabilities from the defendant to the plaintiff—a shifting that, it goes without saying, would eviscerate the "plaintiff-viewpoint rule."

*Second*, now that the Court has added the Plaintiff's attorneys' fees to the amount-in-controversy pot, it cannot, as a practical matter, also include the amount of the Defendant's fees. After all, whatever happens in this case, only one side will prevail—and so, only one side's fees can be awarded.

*Third*, even if the Court were to consider the fees the Defendant had incurred at the time of removal, FDUTPA allows a prevailing party to "receive his or her *reasonable* attorneys' fees and costs from the non-prevailing party." Fla. Stat. § 501.2105 (emphasis added). In this respect, the "award of attorney's fees to the prevailing party under . . . FDUTPA is discretionary with the trial court." *Humane Soc. of Broward Cty., Inc. v. Fla. Humane Soc.*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007). And the "party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable." *Orange Lake Country Club, Inc. v. Castle Law Grp., P.C.*, No. 617CV1044ORL31DCI, 2019 WL 4228712, at *9 (M.D. Fla. Aug. 16, 2019) (citing *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988)).

The Plaintiff filed his Complaint on August 25, 2019, but the Defendant was not served until August 30, 2019. *See* State Court Filings [ECF No. 1-2]. The Defendant removed the case to federal court on September 27, 2019, and now claims that in the 27 days between service and removal, "its attorneys have billed more than $75,000 for work." *See* Notice ¶ 22. But to reach $75,000 at $350/hr[2] in the 27 days in question, the Defendant would have had to devote an

---

[2] This Defendant itself agrees that $350/hr is a reasonable rate for an associate. *See* Notice of Removal Ex. C.

astounding 215 hours of associate work to this case. That amounts to almost eight associate hours *billed* per day for *every day*—including weekends and holidays—since the Defendant was served. Of course, the Defendant's lawyers did nowhere near that much work investigating the complaint and preparing a notice of removal in a state-court case that charges only one count and involves a single bag of chocolates. Put another way, any amount of the Defendant's fees that even approached $50,000—let alone $75,000—for the 27 days in question would be plainly "unreasonable" within the meaning of FDUTPA. *Cf. Castle Law Grp., P.C.*, 2019 WL 4228712, at *9.

Again, "when the amount in controversy substantially depends on a claim for attorneys' fees, that claim should receive heightened scrutiny." *Cohen*, 204 F.3d at 1080 n.10. And the Defendant "bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." *Federated Mut. Ins. Co.*, 329 F.3d at 807; *see also Dart Cherokee Basin*, 574 U.S. at 88. Even if the Court were willing, in short, to add the Defendant's attorneys' fees to the price of the bag of chocolates and the value, from the Plaintiff's perspective, of the injunction, the total amount in controversy in this case would never, in the Court's "judicial experience"—and with a modicum of "common sense"— exceed $75,000.

*******

Accordingly, the Court hereby

**ORDERS and ADJUDGES** that the Plaintiff's Motion to Remand [ECF No. 6] is **GRANTED**. This Court lacks subject matter jurisdiction to hear this case. The case is therefore **REMANDED** to the County Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. The Clerk of Court is directed to **CLOSE** this case, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of November 2019.



_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record